Affirmed in Part, Reversed and
Rendered in Part, Reversed and Remanded in Part, and Opinion filed May 26, 2011.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00329-CV



 

Chevron Phillips Chemical
Company LP AND Exxon Land Development, Inc., Appellants

V.

Kingwood CrossRoads, L.P., Appellee

 

 

Kingwood CrossRoads, L.P., Cross-Appellant

 

V.

 

Chevron Phillips Chemical
Company LP, Exxon Land Development, Inc., and Kingwood Place West Community
Association, Inc., Cross-Appellees

 



On Appeal from the 410th District
Court

Montgomery County, Texas

Trial Court Cause No. 05-03-02662-CV



 

OPINION

This case, consisting of numerous claims and
counterclaims, arose out of a failed transaction for the sale of real property.
 The trial court rendered judgment after a jury verdict.  In the original
appeal, Chevron Phillips Chemical Company LP (“CP Chem”) and Exxon Land
Development, Inc. (“ELDI”) challenge certain aspects of the judgment in favor
of Kingwood CrossRoads, L.P. (“Kingwood CrossRoads”).  In the cross-appeal,
Kingwood CrossRoads assails some portions of the judgment in favor of CP Chem
and ELDI and also names Kingwood Place West Community Association, Inc. (“the
Association”) as a cross-appellee.  We affirm in part, reverse and render in
part, and reverse and remand in part.[1]

I.   Background

The record from the lengthy trial of
this case is quite voluminous.  We set forth only the facts pertinent to our
disposition, which nonetheless are extensive.

A.        Factual Background

The property at issue is a 69.762-acre
tract of land in Kingwood Place
West, a commercial subdivision in the master-planned community of Kingwood in
Montgomery County, Texas.  ELDI was responsible for commercial development of
Kingwood beginning in the 1970s.[2] 
In 1984, ELDI filed in the public records of Montgomery County a document
entitled “Revised and Restated Declaration of Covenants, Conditions and
Restrictions For Kingwood Place West” (“the DCC&Rs”).  This document sets
forth many conditions and restrictions applicable to property subject thereto, including
rules for maintenance assessments, and requires approval of the Architectural
Review Committee (“ARC”) for construction plans, sign placement, landscaping,
and variances from minimum setbacks for buildings and parking.  The Association
is responsible for enforcing the DCC&Rs, maintaining common areas, and
collecting assessments.

In 1994, ELDI sold the property to a Chevron
entity pursuant to a “Purchase and Sale Agreement” (“PSA”) which was
subsequently amended twice, including, as relevant to the present case, by a
“Second Amendment to Purchase and Sale Agreement” (“the 1994 Second Amendment
to PSA”).  The sale was culminated on June 29, 1994, when ELDI conveyed the
property to the Chevron entity via a “Special Warranty Deed” which was
subsequently amended in 1995 by an “Amendment to Deed.”

            In July 2000, CP Chem was
formed as a joint venture of Chevron Corporation and Phillips Petroleum, and the
property was transferred to CP Chem.  After the transfer, CP Chem designated the
property as surplus and sought a purchaser.  In December 2002, Blenheim
Corporation, which is owned by Keith Stone, and CP Chem signed a “Commercial
Contract – Unimproved Property” (“the contract”), whereby Blenheim Corporation agreed
to purchase the property for $3.285 million.  Blenheim Corporation has assigned its rights and
obligations under the contract to Kingwood CrossRoads, a partnership formed by
Stone and others to develop the property.[3]

Pertinent to this suit, two contractual
obligations required resolution before closing of the transaction.  First, in the
contract, CP Chem agreed that, before expiration of the initial feasibility
period, it would secure to Kingwood CrossRoads’s “reasonable satisfaction”
removal of any restrictions precluding use of the property for certain commercial
purposes.[4]
 The Amendment to Deed governing the conveyance from ELDI to Chevron did
contain “Use Restrictions,” which Kingwood CrossRoads opined could be construed
as precluding use of the property for these commercial purposes.  Kingwood CrossRoads
requested that CP Chem secure removal of these restrictions because they would
thwart Kingwood CrossRoads’s development and marketing plans.  CP Chem
eventually obtained ELDI’s execution of a “Second Amendment to Deed,” which permitted
use of the property for the commercial purposes referenced in the contract. 
ELDI placed this document in escrow with First American Title Company (“First
American”), whom the parties retained to provide title insurance for the transaction.

Second, in the contract, CP Chem also
agreed to furnish Kingwood CrossRoads at closing a title insurance policy
subject only to “those title exceptions permitted by this contract or as may be
approved by [Kingwood CrossRoads] in writing” and standard exceptions in the
promulgated form of title policy.  The contract further contained provisions for
“cure” of title defects, which we will later discuss in more detail.  In
essence, CP Chem was required to provide Kingwood CrossRoads a commitment for
title insurance within thirty days after contract execution.  Kingwood CrossRoads
could object to defects in title by a certain deadline.  CP Chem was allowed, but
not obligated, to cure timely objections within a defined “cure period,” not to
exceed the contract’s feasibility period, provided that Kingwood CrossRoads
could terminate the contract if CP Chem failed to cure.  

In late December 2002, First American
issued its first title commitment, which included an exception objectionable to
Kingwood CrossRoads.  Specifically, the commitment referenced a document
executed by ELDI on June 29, 1994 (the day it conveyed the property to CP
Chem’s predecessor), and filed with the Montgomery County Clerk on July 1, 1994,
purporting to annex the property “into the jurisdiction of [the DCC&Rs],”
and “subject [the property] to [the DCC&Rs] and the authority of [the
Association]” (“the Annexation Document”).  Kingwood CrossRoads considered
annexation an impediment to its ability to develop and market the property based
on the fact that the property would be subject to the DCC&Rs, including the
requirement for ARC approval of construction plans, and annexation would entail
payment of assessments.

            Whether the property was validly
annexed via filing of this document became the subject of a vigorous dispute.  After
receiving the commitment, Kingwood CrossRoads’s counsel for the real-estate
transaction questioned whether the Annexation Document effectively annexed the
property because (1) no legal description of the property purportedly being
annexed was attached, and (2) the general description of the property
purportedly being annexed referenced “Kingwood Place West,” but counsel
believed the property at issue was located in “Kingwood Place.”  Counsel confirmed
with First American that there was no property-description addendum to the
Annexation Document.  Counsel also requested any bills for assessments CP Chem
had received from the Association.  CP Chem replied that the property was not part
of the Association and thus CP Chem did not receive bills for, or pay,
assessments.

Counsel then lodged a formal objection
to the annexation exception with CP Chem and opined the Annexation Document was
ineffective.  However, counsel doubted his legal opinion would satisfy First
American and recommended that CP Chem ask EDLI to execute a “Confirmation of
Non-Annexation.”  CP Chem complied, explaining to ELDI that the property was
not properly annexed.

By late February 2003, CP Chem and Kingwood
CrossRoads had persuaded First American to revise the title commitment by deleting
the annexation exception and any reference to the DCC&Rs.  Over the next
year and a half, First American periodically renewed this commitment as the
transaction proceeded toward the scheduled closing.

Notwithstanding the revised title
commitment, Kingwood CrossRoads still wanted ELDI’s Confirmation of
Non-Annexation because mere existence of the Annexation Document could affect
marketability of the property. Throughout 2003 and the first part of 2004, CP
Chem and Kingwood CrossRoads negotiated with ELDI, attempting to resolve the
issue.  

CP Chem engaged outside counsel, who also
opined the Annexation Document was ineffective because it lacked a legal
property description and was filed with the county clerk several days after ELDI
divested itself of the property via the Special Warranty Deed.  Counsel also
noted the Association had taken no action affecting the property, including
assessment of fees, since the original Chevron entity’s purchase.  CP Chem
forwarded its counsel’s written opinion to ELDI.  An ELDI attorney replied that
ELDI and CP Chem’s predecessor had agreed to annexation.  The attorney was
referring to a provision in the 1994 Second Amendment to PSA stating, “[p]rior
to Closing the Property shall be annexed into [the Association]” and the fact
that the form Annexation Document was an exhibit to this amended PSA.  ELDI
suggested CP Chem re-record the Annexation Document to prevent any further
questions.  Due to corporate restructuring, CP Chem was missing the 1994 Second
Amendment to PSA.  After receiving the document, CP Chem’s counsel continued to
opine the property was not annexed.  ELDI ultimately indicated it was willing
to compromise regarding some restrictions but maintained that the property had
been validly annexed.

During these efforts, Kingwood CrossRoads
and CP Chem continually communicated with each other.  Richard Mawdsley, a CP
Chem in-house counsel, was originally responsible for conducting the sale.  According
to Kingwood CrossRoads, Mawdsley promised that CP Chem would obtain ELDI’s Confirmation
of Non-Annexation even through litigation if necessary.  Kingwood CrossRoads stressed
to CP Chem that it had already invested considerable time and money towards
acquiring, marketing, and developing the property, resolution of the annexation
issue was “critical” to its ability to develop the property, and it understood
a “low key” approach was preferable but expected CP Chem to litigate the issue
if ultimately necessary, as promised.  

According to Kingwood CrossRoads,
Mawdsley also promised that CP Chem would execute a “Declaration of Non-annexation”
to satisfy future purchasers and title insurers.  Kingwood CrossRoads
considered a CP Chem declaration, while less conclusive than an ELDI
confirmation, more effective than the “technical legal analysis,” which the
parties and First American had found convincing. 

Mawdsley did not correct Kingwood CrossRoads’s
expectations regarding litigation and the declaration, but he did not
affirmatively confirm such promises.  In internal CP Chem e-mails, Mawdsley and
his superior, Arlen Allison, did opine the attempted annexation was invalid, acknowledged
the issue must be resolved because Kingwood CrossRoads was expending money on
due diligence efforts, and outlined a plan to obtain ELDI’s confirmation, mentioning
litigation “as a last resort.”

Mawdsley’s employment with CP Chem
ended in mid-2003.  Allison became the primary CP Chem contact for the sale
although Kingwood CrossRoads also communicated with other CP Chem employees or
officers.  Kingwood CrossRoads continued emphasizing the importance of
resolving the annexation issue to its ability to develop the property and insisting
that it had been repeatedly assured CP Chem would litigate with ELDI, if
necessary.  CP Chem expressed to Kingwood CrossRoads its continuing interest in
resolving the issue and, at one point, listed litigation as the last of several
“options,” but emphatically disagreed it was obligated to resolve the issue or
had promised to litigate.  CP Chem invited Kingwood CrossRoads to forego the
purchase before expiration of the feasibility period if it was not satisfied.

            In February or March
2004, CP Chem ceased efforts to resolve the annexation issue with ELDI because
they were obviously futile.  The feasibility period, which had been extended
several times, finally ended on June 29, 2004.  Although Kingwood CrossRoads
was profoundly displeased with CP Chem’s refusal to litigate the annexation
issue against ELDI, Kingwood CrossRoads decided to proceed with closing because
it had already incurred expenses preparing for performance and at least had a
commitment for title insurance to protect it against an annexation claim and CP
Chem’s agreement to sign the Declaration of Non-annexation.  

During the next two months, the
parties discussed the Declaration of Non-annexation.  Kingwood CrossRoads
reiterated that Mawdsley had promised CP Chem would sign the declaration.  CP
Chem replied that it had made no such promise, bore no obligation to sign the
declaration or resolve the annexation issue, and hoped Kingwood CrossRoads would
close without the declaration.  However, CP Chem was willing to sign an
affidavit averring it had never paid assessments or received benefits from the
Association.

Closing was originally scheduled for
August 30, 2004.  By letter dated August 23, 2004, CP Chem informed Kingwood CrossRoads
that CP Chem could not identify whether certain documents germane to the title
issue had been provided to First American and requested a discussion by the end
of the next day to confirm disclosure had been made or outline how  how to
proceed with disclosure.  Receiving no response, CP Chem sent a letter to First
American on August 25, 2004, which we will later discuss in more detail.  CP
Chem effectively informed First American that ELDI claimed the property is
annexed and subject to the DCC&Rs, ELDI produced the 1994 Second Amendment
to PSA supporting its position after First American deleted the annexation
exception, and the parties had been unable to resolve the dispute.

            Before CP Chem sent this
letter to First American, Kingwood CrossRoads had actually attempted to respond
to CP Chem’s request for a discussion.  In its response, Kingwood CrossRoads urged
CP Chem to honor its agreements, including the promise to provide a Declaration
of Non-annexation.  Kingwood CrossRoads also protested CP Chem’s intent to
provide more information to First American: Kingwood CrossRoads claimed CP Chem
was trying to persuade First American to dishonor its title commitment and disclosure
to First American regarding ELDI’s position on the annexation issue was
unnecessary because limitations would bar any attempt by ELDI to enforce the agreement
in the 1994 Second Amendment to PSA to effect annexation.  However, Kingwood CrossRoads
was informed of CP Chem’s letter to First American before sending its response
to CP Chem.

The closing was postponed until
September 15, 2004 in light of CP Chem’s letter to First American.  Kingwood CrossRoads
appeared for the closing, but that day, First American announced it would not
issue a title policy without an annexation exception.  First American
acknowledged validity of the position that the property is not annexed; but
based on mere existence of the dispute, it would not risk undertaking the costs
of defending title against an annexation claim.  In a revised title commitment issued
that same day, First American reinserted the annexation exception.  Shortly
thereafter, Kingwood CrossRoads sued First American in a Harris County court.

During the rest of 2004 and early
2005, Kingwood CrossRoads and CP Chem discussed various resolutions to close
the transaction.  CP Chem allowed Kingwood CrossRoads to seek insurance from
another company but insisted on full disclosure regarding the annexation issue. 
Although Kingwood CrossRoads maintained that CP Chem was obligated to furnish
the insurance, Kingwood CrossRoads sought another insurer because CP Chem
refused to do so.  However, no company was willing to issue a policy without an
annexation exception.

In early January 2005, CP Chem
notified Kingwood CrossRoads that it elected to terminate the contract and
retain the earnest money because Kingwood CrossRoads had breached but remained willing
to complete the sale if closing occurred before March 31, 2005.  Additionally, CP
Chem obtained ELDI’s agreement to extend until March 31, 2005 its Second
Amendment to Deed amending the use restrictions, but ELDI tied any further
extensions to a satisfactory concession on annexation.  On February 24, 2005, CP
Chem notified Kingwood CrossRoads that CP Chem’s most recent settlement offer had
expired without timely acceptance by Kingwood CrossRoads and CP Chem intended to
settle the annexation dispute with ELDI to avoid “costly” litigation.

  Concerned that ELDI and CP Chem
would cloud title by successfully annexing the property, Kingwood CrossRoads
amended its suit on March 11, 2005 to add CP Chem, ELDI, and the Association as
defendants.  On March 16, 2005, ELDI withdrew the Second Amendment to Deed from
escrow admittedly to prevent the transaction from closing without acknowledgement
of a valid annexation.  Shortly thereafter, Kingwood CrossRoads dismissed the
suit and refiled in Montgomery County (the underlying trial court) for venue
reasons.

            Kingwood CrossRoads eventually
settled with the Association and First American for $950,000 total.[5] 
Kingwood CrossRoads’s lengthy live petition contained numerous claims against
CP Chem and ELDI, including breach of contract, tortious interference with
contract, fraud, and negligent misrepresentation.  Kingwood CrossRoads
requested damages, equitable relief, including an order for specific
performance of the contract, and a declaratory judgment that the property is
not annexed.

CP Chem filed
a counterclaim for breach of contract, among other actions.  ELDI filed a
counterclaim requesting a declaratory judgment that the property is annexed or otherwise
subject to the DCC&Rs by agreement between ELDI and CP Chem’s predecessor
or by implication.

B.        Jury Findings

A jury trial was conducted on the
remaining claims.  The original and an additional jury charge were extensive. 
Pertinent to this appeal, the jury found as follows:

Annexation
and DCC&Rs Questions

The Annexation Document did not sufficiently describe
the property to be annexed.

 

ELDI and the Association waived, and are estopped from,
enforcement of the Annexation Document.

 

ELDI and CP Chem agreed the property would be subject
to the DCC&Rs regardless of whether it was annexed.

 

The property is subject to the DCC&Rs by implication.

 

ELDI and the Association neither waived, nor are
estopped from, enforcement of the DCC&Rs.

 

            Contract Questions

 

CP Chem failed to comply with the contract.

 

Kingwood CrossRoads sustained $4 million in loss-of-benefit-of-the-bargain
damages and $350,000 in out-of-pocket damages as a result of CP Chem’s failure
to comply. 

 

CP Chem’s failure to comply was excused by impracticability.

 

Kingwood CrossRoads did not fail to comply with the
contract and was ready, willing, and able to perform but was prevented from
doing so by another.

 

Kingwood CrossRoads was a third-party beneficiary of
the Second Amendment to Deed, but ELDI did not fail to comply with this
instrument.

 

            Fraud Questions

CP Chem committed fraud against Kingwood CrossRoads,
causing the following damages:  $350,000 in out-of-pocket expenses incurred by
Kingwood CrossRoads in preparation for, or performance of, the contract; and
$2.5 million in attorneys’ fees for litigating the declaratory-judgment action concerning
the annexation issue against ELDI.

 

ELDI did not commit fraud but did conspire with CP
Chem to commit fraud (submitted relative to only the $350,000 out-of-pocket damages).

 

CP Chem and ELDI made negligent misrepresentations,
causing $350,000 in out-of-pocket damages.

 

Tortious
Interference Questions

ELDI intentionally interfered with the contract but possessed
a good-faith belief it had a right to do so.

 

ELDI and CP Chem intentionally interfered with the
title commitment but each possessed a good-faith belief it had a right to do
so. 

            

C.        The Judgment

The trial court conducted a hearing
on various post-trial motions and issues pertaining to rendering judgment.  On
January 11, 2008, the court signed a final judgment containing many numbered
paragraphs, encompassing the following rulings:

Declaratory Judgments and Equitable
Relief

The trial court rendered the
following declarations:  

The property is not annexed because the Annexation
Document contained a legally insufficient property description; or if it is
determined on appeal that the property is annexed, ELDI and the Association
waived, or are estopped from enforcing, their rights under the Annexation
Document.  (Paragraph 9)[6]

 

The property is subject to the DCC&Rs regardless
of whether it is annexed; and ELDI and the Association have neither waived, nor
are estopped from enforcing, their rights under the DCC&Rs.  (Paragraph 10)

 

The court also ordered CP Chem and
Kingwood CrossRoads to specifically perform the contract.  (Paragraph 11)

            Monetary Damages
and Attorneys’ Fees Awarded to Kingwood CrossRoads 

The court included several paragraphs
addressing the award of monetary damages and attorneys’ fees to Kingwood CrossRoads. 
The court first stated that Kingwood CrossRoads is “entitled” to recover the
following:

$2.5 million in fraud damages against CP Chem.  (Paragraph
1)

 

$2,942,335 in attorneys’ fees against CP Chem on
Kingwood CrossRoads’s breach-of-contract action or $2,795,218.25 if it is
determined on appeal that these fees should have been segregated.  (Paragraph
4)

 

$1,912,517.75 in attorneys’ fees against CP Chem on
Kingwood CrossRoads’s declaratory-judgment action or $1,816,891.86 if it is
determined on appeal that these fees should have been segregated.  (Paragraph
5)

 

$1,029,817.25 in attorneys’ fees against ELDI on
Kingwood CrossRoads’s declaratory-judgment action or $978,326.39 if it is
determined on appeal that these fees should have been segregated.  (Paragraph
6)[7]

 

The court then included Paragraph 8a
which stated,

Kingwood CrossRoads shall recover: (i) damages from CP
Chem for fraud in the amount of $2,500,000.00: and (ii) attorneys’ fees from [ELDI]
for Kingwood CrossRoads’ prosecution of its claim for declaratory judgment in
the amount of $1,029,817.25, or $978,326.39 if on appeal it is determined that
Kingwood CrossRoads should have segregated its attorneys’ fees.  Kingwood CrossRoads’
total recovery, not including pre- and post judgment interest, appellate
attorneys’ fees, or sanctions and appellate attorneys’ fees for the sanctions
award, shall not exceed $2,942,335.00 or, if on appeal it is determined that
Kingwood CrossRoads should have segregated its attorneys’ fees, $2,795,218.25.

 

The above cited portions of the
judgment are not exactly clear:  In Paragraphs 1, 4, 5, and 6, the court
outlined amounts Kingwood CrossRoads is “entitled” to recover.  However,
Paragraph 8a stating that Kingwood CrossRoads “shall recover” certain amounts
is more of an actual order for recovery; yet it omitted attorneys’ fees against
CP Chem on Kingwood CrossRoads’s contract action despite the court’s
determination that Kingwood CrossRoads was “entitled” to recover these fees.  It
appears from all of these paragraphs and the court’s comments at the post-trial
hearing that Paragraphs 1, 4, 5, and 6 outlined damages and attorneys’ fees Kingwood
CrossRoads is authorized to recover, but paragraph 8a limited total recovery to
$2,942,335.  Regardless, as explained below, we do not uphold recovery of any
above-outlined amounts; therefore, we need not ascertain the specific recovery intended.

Attorneys’ Fees Awarded to CP Chem 

The court awarded CP Chem, as a “prevailing
party” in Kingwood CrossRoads’s  contract action and “as a just and equitable
award” under the Texas Declaratory Judgment Act, attorneys’ fees from Kingwood CrossRoads
of $1,200,000 or this amount reduced by 5% if it is determined on appeal that
CP Chem should have segregated attorneys’ fees.  (Paragraph 8b)

Appellate Attorneys’ Fees

The court also awarded both Kingwood CrossRoads
and CP Chem attorneys’ fees for prevailing in a court of appeals or the Supreme
Court of Texas.  (Paragraph 12)

Sanctions Against ELDI

            The court had granted Kingwood
CrossRoads’s pre-trial motion for sanctions against ELDI based on a discovery
dispute.  In the judgment, the court assessed $637,612.50 in sanctions and
awarded Kingwood CrossRoads additional attorneys’ fees if it prevails on an
appeal of the sanctions.  (Paragraphs 13 and 14) 

            Take-Nothing Rulings        

The remainder
of the judgment contains rulings that the parties take nothing on claims for
which jury findings supported no liability or damages assessed by the jury were
offset in full by settlement credits, including the following: Kingwood CrossRoads’s
claims for breach-of-contract damages and tortious interference against CP Chem
and ELDI; CP Chem’s counterclaims; and Kingwood CrossRoads’s $350,000 in out-of-pocket
damages for fraud and negligent misrepresentation against CP Chem and ELDI (offset
by settlement credits).

II.    The Issues

CP Chem
presents six numbered issues but essentially challenges three aspects of the
judgment: (1) the specific-performance order; (2) the award of fraud damages to
Kingwood CrossRoads; and (3) the award of attorneys’ fees to Kingwood CrossRoads.

            In its two issues, ELDI
challenges (1) the award of attorneys’ fees to Kingwood CrossRoads, and (2) the
sanctions order.  Under its first issue, ELDI also contends the trial court
erred by declaring the property is not annexed.  However, ELDI advances this
argument only to attack Kingwood CrossRoads’s recovery of attorneys’ fees for
obtaining the declaration; ELDI presents alternative reasons the award is
allegedly improper even if the property is not annexed.

In its
cross-appeal, Kingwood CrossRoads presents three issues, challenging (1) the
declaration that the property is subject to the DCC&Rs even if not annexed,
(2) the jury’s impracticability finding, and (3) the award of attorneys’ fees
to CP Chem.

            We will first address the
contract issues presented by both Kingwood CrossRoads and CP Chem because our
decision on these issues drives the disposition of some other issues.  As
discussed below, we uphold the jury’s finding of impracticability but conclude
the trial court erred by ordering specific performance.  We then conclude the
evidence is legally insufficient to support the fraud finding against CP Chem. 
In light of our reversing the specific-performance order, we conclude the trial
court erred by declaring the property is not annexed and Kingwood CrossRoads’s
attack on the declaration regarding the DCC&Rs is rendered moot.  Additionally,
based on these foregoing conclusions, we hold the trial court erred by awarding
attorneys’ fees to Kingwood CrossRoads for prosecuting any of its claims but CP
Chem and Kingwood CrossRoads are each entitled to recover attorneys’ fees for
successful defending the other’s contract claims.  Finally, we uphold the
sanctions against ELDI.

III.   Impracticability

The jury found that CP Chem’s failure
to comply with the contract was excused by impracticability.  Kingwood CrossRoads
challenges this finding because it precluded recovery of monetary damages.[8] 
CP Chem contends it complied with the contract but also urges the
impracticality finding should be upheld.

Preliminarily, we must define the
action which allegedly constituted a breach of contract.  Although, at trial,
Kingwood CrossRoads suggested several manners in which CP Chem breached the
contract, Kingwood CrossRoads primarily focused on CP Chem’s failure to furnish
a title policy with no annexation exception.  On appeal, Kingwood CrossRoads
relies solely on this action when contending CP Chem breached the contract and
challenging the impracticability finding. 

Kingwood CrossRoads presented
evidence that, at expiration of the feasibility period, it intended to close despite
ELDI’s refusal to confirm non-annexation because (1) it had received an
uninterrupted series of title commitments containing no annexation exception, (2)
CP Chem had agreed to sign a Declaration of Non-annexation, (3) the Second
Amendment to Deed easing use restrictions was in escrow with First American,
and (4) Kingwood CrossRoads possessed all funds necessary to close.  Kingwood CrossRoads’s
real-estate counsel testified that First American’s last-minute reinsertion of
the annexation exception was the only reason the transaction did not close on
September 15, 2004 and CP Chem had complied with all contractual obligations except
furnishing a title policy with no annexation exception.[9] 
Thus, Kingwood CrossRoads claimed it was ready, willing, and able to perform but
CP Chem’s breach prevented the closing because Kingwood CrossRoads’s
willingness to purchase the property was contingent on obtaining insurance to
protect against a future annexation claim.  Accordingly, we evaluate the
contract issues with respect to this alleged breach.[10]

Kingwood CrossRoads contends the
evidence is legally insufficient to support the jury’s finding that CP Chem’s
failure to furnish the title policy was excused by impracticability.  When
examining a legal-sufficiency challenge, we review the evidence in the light
most favorable to the challenged finding and indulge every reasonable inference
that would support it.  City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005).  We credit favorable evidence if reasonable jurors could and
disregard contrary evidence unless reasonable jurors could not.  Id. at
827.  The jury is sole judge of the credibility of witnesses and the weight to
be given their testimony.  Id.  There is “no evidence” or
legally-insufficient evidence when (a) there is a complete absence of evidence
of a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d)
the evidence conclusively establishes the opposite of the vital fact.  See
id. at 810; Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997).  The evidence is legally sufficient if it would enable
reasonable and fair-minded people to reach the verdict under review.  City
of Keller, 168 S.W.3d at 827.

The jury was instructed as follows regarding
impracticability:

Failure to comply is justified if [CP Chem’s]
performance was impracticable.

 

Where, after a contract is made, a party’s performance
is made impracticable without his fault by the occurrence of an event the
non-occurrence of which was a basic assumption on which the contract was made,
its duty to render that performance is discharged.

 

A party is expected to use reasonable efforts to
surmount obstacles to performance, and a performance is impracticable only if
it is so despite such efforts.

 

Kingwood CrossRoads argues the
evidence is legally insufficient to support the impracticability finding because
(1) as a matter of law, CP Chem assumed the risk that performance might become
impracticable, (2) there is no evidence performance became impracticable
“without [its] fault,” and (3) there is no evidence it used “reasonable efforts”
to surmount the obstacle to performance.

A.        Assumption-of-Risk Argument

With respect to both breach and
impracticability issues, CP Chem suggests the contract did not impose the
“impossible task” of furnishing a title policy with no annexation exception because
such action would require the cooperation of a third party (First American)
over whom CP Chem had no control.  Kingwood CrossRoads contends the contract
indeed imposed such a requirement; therefore, by accepting the contractual
obligation of having a third party act, CP Chem assumed the risk First American
might not do so and CP Chem’s non-compliance may not be excused for
impracticability.

The definition of “impracticability”
submitted to the jury was consistent with the definition set forth in the
Restatement of Contracts and recognized under Texas law except the trial court
omitted the following emphasized language: “Where, after a contract is made, a
party’s performance is made impracticable without his fault by the occurrence
of an event the non-occurrence of which was a basic assumption on which the
contract was made, its duty to render that performance is discharged, unless
the language or the circumstances indicate the contrary.”  Restatement
(Second) of Contracts § 261 (1981) (emphasis added); see Tractebel
Energy Mktg., Inc. v. E.I. du Pont de Nemours & Co., 118 S.W.3d 60,
64–65 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (recognizing that section
261 exists in Texas law).  This emphasized language encompasses the assumption-of-risk
principle relied on by Kingwood CrossRoads.  See Estate of Pingree v.
Triple T Foods, Inc., 430 F. Supp. 2d 1226, 1237 (D. Kan. 2006); Restatement
(Second) Of Contracts § 261, cmt. c.

Kingwood CrossRoads cites authority stating
that “‘if the contract, properly construed, shows that the promisor assumed the
risk of unanticipated events, the occurrence of such events does not excuse
performance.’”  Robberson Steel, Inc. v. J. D. Abrams, Inc., 582 S.W.2d
558, 561 (Tex. Civ. App.—El Paso 1979, no writ) (quoting W.
Los Angeles Inst. for Cancer Research v. Mayer, 366 F.2d 220 (9th Cir.
1966)); see Restatement (Second) of Contracts § 261, cmt. c (“A party
may, by appropriate language, agree to perform in spite of impracticability
that would otherwise justify his non-performance under the rule stated in this
Section. He can then be held liable for damages although he cannot perform.
Even absent an express agreement, a court may decide, after considering all the
circumstances, that a party impliedly assumed such a greater obligation.”).

Kingwood CrossRoads also cites the
principle that, “[e]ven if a party contracts to render a performance that
depends on some act by a third party, he is not ordinarily discharged because
of a failure by that party because this is also a risk that is commonly
understood to be on the obligor.”  Restatement (Second) of Contracts § 261,
cmt. e; see Toyo Cotton Co. v. Cotton Concentration Co., 461 S.W.2d 116,
118 (Tex. 1970) (“‘One who contracts to render a performance or
produce a result for which it is necessary to obtain the co-operation of third
persons is not excused by the fact that they will not co-operate.  This is a
risk that is commonly understood to be on the promisor, in the absence of a
provision to the contrary. . . .’”) (quoting 6 Arthur L. Corbin, Corbin on
Contracts § 1340 (1962)).

Defenses to breach of contract
generally entail fact questions unless the facts are uncontested.  See Tractebel
Energy Mktg., 118 S.W.3d at 65.  However, in this case, whether CP
Chem assumed the risk of the unanticipated event is a question of law because
it involves contract construction.  See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 650–51 (Tex. 1999) (holding that construction of unambiguous contract is
question of law for the court).  Kingwood CrossRoads contends the trial court
erred by failing to conclude that CP Chem assumed the risk as a matter of law.[11]
 In construing a written contract, our primary concern is ascertaining the true
intentions of the parties as expressed in the instrument.  J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  We must examine and
consider the entire writing in an effort to harmonize and give effect to all
provisions so that none will be rendered meaningless.  Id.

Because we uphold the impracticability finding, we need not
decide whether CP Chem failed to comply with the contract when it did not
furnish a title policy with no annexation exception.  Nevertheless, these
issues are somewhat interrelated because understanding the contentions
regarding CP Chem’s alleged obligation to furnish such a policy is necessary to
address whether it was permitted to assert an impracticability defense.

Admittedly, the contract questions in
this case are difficult with respect to interpreting the parties’ intent as
expressed in the contract.  Specifically, the contract expressly required CP
Chem to furnish a policy subject only to “those title exceptions permitted by
this contract or as may be approved by [Kingwood CrossRoads] in writing” and
standard exceptions in the promulgated form of the title policy.  The contract
contained no provision expressly permitting an exception for annexation,
Kingwood CrossRoads did not agree in writing to this exception, and it was not
a standard exception in a form title policy.

Additionally, the cure provisions
shed light on the extent to which exceptions were permitted by the contract.  These
provisions outlined decisions on title exceptions to be made by the parties
within a certain time period after receiving the title commitment.  If Kingwood
CrossRoads did not timely object, it accepted the exception in the policy
ultimately furnished.  Alternatively, Kingwood CrossRoads could timely object, in
which case CP Chem could decide whether to cure.  If it declined to cure or was
unsuccessful in an attempt to cure, Kingwood CrossRoads could terminate the
contract and obtain a refund of its earnest money or proceed with the contract,
thereby accepting the exception.

In the present case, Kingwood CrossRoads
timely objected, and CP Chem did successfully effectuate a cure—at least during
the cure period; i.e., First American deleted the annexation exception from the
initial title commitment.  However, this case seems to present an unusual
situation because the exception later became essentially “uncured” when First
American reinserted it in the commitment before the transaction could close.[12]

CP Chem suggests it could not have
committed any breach by failing to furnish a policy without the exception at
closing because it was never obligated to do so in the first place.  CP Chem
relies on the language in the cure provisions stating that it “may, but is
not obligated to, cure [Kingwood CrossRoads’s] timely objections within 20
days after Seller receives the objections . . . .” (emphasis added).  However,
such a construction renders meaningless the provision in the contract obligating
CP Chem to furnish a policy with no exceptions other than those permitted by
the contract.  Reconciling these provisions, the language stating that CP Chem
“is not obligated” to cure timely objections seemingly applied to CP Chem’s
rights when the commitment was originally issued; CP Chem could elect not to
cure, or attempt to cure albeit unsuccessfully, during the cure period. 
Consequently, exceptions permitted by the contract apparently included those to
which Kingwood CrossRoads did not timely object, or those to which it timely
objected but later accepted despite CP Chem’s election not to cure or inability
to cure.  Therefore, it appears that, once an exception was cured, it was no
longer permitted by the contract, and CP Chem was obligated to furnish a title
policy without the exception.

Apparently, Kingwood CrossRoads
contends that, once an exception was cured, CP Chem could never claim
impracticability if the title company later reinserted the exception because it
assumed the risk of such an event.  We disagree.  On one hand, the contract
contained no provision specifically relieving CP Chem of any obligation to
furnish a title policy without a cured exception even if it was later
reinserted by the title company; the contract does not directly address such a
situation.  At trial, a CP Chem attorney testified the cure period began anew
once First American reinserted the exception, thereby suggesting CP Chem could
decide at that time whether to cure.  However, we find no such provision in the
contract.  Moreover, this position seems contrary to the contract provision expressing
that the cure period cannot extend beyond the feasibility period, which had
already expired when the exception was reinserted; i.e., it was too late for
Kingwood CrossRoads to terminate if CP Chem could not effect a cure.  

On the other hand, there was no
provision under which CP Chem specifically assumed the risk a title company
would reinsert an exception that previously had been cured.  To the contrary,
the cure provisions seemed to ensure that CP Chem would know what exceptions
the title company intended to include during a time when CP Chem still had an
opportunity to cure, and the only result of its failure to do so was the risk
that Kingwood CrossRoads would exercise its right to terminate.  Consequently,
we cannot agree the parties contemplated that CP Chem would potentially be
liable in breach of contract for failing to furnish a policy without an exception
because the title company reinserted a cured exception when it was too late for
CP Chem to further attempt a cure and for Kingwood CrossRoads to terminate.

Moreover, when First American
reinserted the annexation exception, it did not necessarily agree the property
was annexed but refused to insure title absent the exception based on mere
existence of the dispute.  However, this possibility seemed to exist long
before First American reinserted the exception because ELDI has consistently
maintained the property was annexed and the document in which ELDI and CP Chem
purportedly agreed to effect annexation has existed since 1994.  We recognize
that Kingwood CrossRoads settled with First American before trial; thus, we
need not evaluate its liability, including whether it was entitled to reinsert
an exception upon receiving further information.  However, a paragraph of
Kingwood CrossRoads’s petition from its original suit against only First
American was admitted into evidence.  This paragraph at least indicates that,
at one point, Kingwood CrossRoads held the same view: CP Chem was not
responsible for First American’s last-minute reinsertion of the exception based
on information that existed when it was originally cured:

The closing of the purchase and sale transaction
contemplated by the [contract] was not consummated on September 15, however, due
solely to the actions or inactions of First American.  Despite its
obligations under the [commitment], First American refused to issue the owner’s
policy of title insurance in accordance with the [commitment]. . . . First
American attempted to add additional exclusions/exceptions to the proposed
title insurance policy, which were not previously disclosed by First American
to Kingwood CrossRoads despite the fact that the documents evidencing such
purported exclusions/exceptions existed long before the [commitment] was
issued. . . . Additionally, because First American waited to the last
possible moment to attempt to unilaterally modify First American’s obligations,
it deprived CPChem of the ability to cure its noncompliance with its specific
obligation under the Sales Contract to deliver a title insurance policy.”

 

(emphasis added).

In sum, CP Chem may have assumed an
obligation that required action by a third party, but subject to the scheme outlined
in the cure provisions.  See Toyo Cotton Co., 461 S.W.2d at
118 (reciting principle that one who contracts to render performance
requiring act of third party assumes risk they will not cooperate “in the
absence of a provision to the contrary”) (emphasis added).  Therefore, this
situation was appropriately addressed via the impracticability defense rather
than a conclusion that CP Chem did not fail to comply with the contract; i.e.,
a situation arose (reinsertion of a cured title exception) that prevented CP
Chem’s compliance and was not directly excused in the contract but was contrary
to the scheme set forth therein for resolving title exceptions.  See Tractebel
Energy Mktg., 118 S.W.3d at 66 (stating that impracticability excuses a
party’s breach when contract itself does not provide “escape clause” and
doctrine’s other requirements are satisfied).  Accordingly, we reject Kingwood CrossRoads’s
contention that CP Chem assumed the risk of impracticability as a matter of law.

B.        “Without . .
. Fault” Element

Kingwood CrossRoads also contends CP
Chem did not prove that performance became impracticable without its fault because
it actually created the obstacle.  Kingwood CrossRoads relies on the letter CP
Chem wrote to First American on August 25, 2004 (several days before the
originally-scheduled closing), stating in pertinent part,

In preparing for closing we have been unable to
determine if certain documentation has been forwarded to [First American]
regarding [CP Chem’s] acquisition of the subject tract and the purported
contemporaneous annexation of the subject tract and imposition of certain
architectural review committee approval rights. 

 

Prior to First American initially identifying certain
documents purporting to annex the subject tract and to impose architectural
review committee approval rights, [CP Chem] was unaware of their existence.  In
subsequent communications, [Kingwood CrossRoads], who is purchasing the subject
tract from [CP Chem], requested that First American omit any title exception
with respect to either the annexation or the architectural review committee
approval rights.  At the time, [CP Chem] personnel were unaware of any
potentially relevant agreement and had no record of dues, invoices or other
matters relating to the purported annexation of the subject tract.

 

Although First American omitted such title exceptions
from the current commitment, the parties have been unable to reach agreement
with representatives of the . . .  original grantor, [ELDI], to file documents
excluding the subject tract from annexation or architectural review committee
rights. ELDI produced documents, including a signed Second Amendment to the
Purchase and Sale Agreement between [CP Chem] and [ELDI]. The Second Amendment
contains provisions relating to both annexation and architectural review
committee rights. CPChem thereafter obtained a file containing the Second
Amendment and various other documents.

Based on our discussions with ELDI, it is our
understanding that ELDI is claiming that: (i) the annexation is effective
against the subject tract; (ii) the 1995 Amendment to Deed evidences that the
property was intended to be subject to “Declaration of Covenants, Conditions
and Restrictions”; and (iii) the 1991 Purchase and Sale Agreement and its 1994
Second Amendment obligate the owner of the subject tract to submit plans for
architectural review committee approval.  Neither [CP Chem] (nor [Kingwood CrossRoads]
to our knowledge) concede that the annexation or architectural review committee
rights are effective against the subject tract. Still, despite discussions with
ELDI we have not been able to reach a resolution of this dispute that is
acceptable to [Kingwood CrossRoads].

. . .

We feel it is appropriate to disclose to you the
foregoing information and are happy to discuss with you this matter and related
documents if you wish to do so.

 

Although CP Chem did not exactly “create”
the obstacle because ELDI was the party insisting the property was annexed, CP
Chem’s letter certainly informed First American of the pending dispute.  Both
the senior underwriting counsel and a vice-president of First American testified
the letter caused reinsertion of the exception.  Kingwood CrossRoads posits CP
Chem cannot prove performance of the contract became impracticable without its
fault when it took the action that derailed the transaction.  See, e.g.,
Nat’l Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 333 (5th
Cir. 1987) (recognizing party may not rely on impracticability doctrine if
it affirmatively caused unanticipated event preventing performance); Farmers’
Elec. Co-op., Inc. v. Missouri Dep’t of Corr., 977 S.W.2d 266, 271 (Mo.
1998) (stating with respect to “impossibility” defense, “A party cannot by its
own act place itself in a position to be unable to perform a contract, then
plead that inability to perform as an excuse for nonperformance”); Restatement
(Second) of Contracts § 261, cmt. d (stating impracticability defense does not
apply if event is obligor’s fault).

At trial and on appeal, the parties
have painted contrasting pictures regarding CP Chem’s reasons for sending the
letter.  CP Chem claimed that it attempted to accommodate Kingwood CrossRoads
and persuade ELDI to agree the property was not annexed.  However, when such
efforts proved unsuccessful, CP Chem became concerned that (1) Kingwood CrossRoads
had never provided First American with the 1994 Second Amendment to PSA or
informed First American of the escalating dispute with ELDI, and (2) CP Chem had
previously represented to First American that CP Chem’s predecessor had not
consented to the annexation whereas CP Chem now possessed the 1994 Second
Amendment to PSA indicating the contrary.  In essence, CP Chem blamed Kingwood CrossRoads
for withholding information from First American because the title commitment required
Kingwood CrossRoads to notify First American of any matter that “may” affect
title and even First American’s underwriting counsel expressed surprise
Kingwood CrossRoads had not provided the information contained in the letter. 
CP Chem contended Kingwood CrossRoads’s goal was to obtain insurance with no
annexation exception so that it could simply rely on First American to bear the
expense of defending title if an annexation claim later arose.  In sum, CP Chem
claimed the letter was intended solely to provide full disclosure and prevent a
later accusation that it committed fraud on an insurance company, rather than to
derail the transaction; thus, its sending the letter did not negate
availability of the impracticability defense.

Kingwood CrossRoads claims that CP
Chem’s explanation was “transparently pretextual” and the following actually
characterizes what occurred from CP Chem’s perspective.  Because CP Chem was
anxious to consummate the sale, it concurred from the outset that the purported
annexation was invalid and promised to resolve the issue.  However, ELDI eventually
insisted that CP Chem honor its predecessor’s 1994 commitment to effect
annexation, and ELDI was determined to prevent the sale without an acknowledgement
of annexation.  As closing approached, CP Chem was forced to choose between two
options: selling property that was not annexed to Kingwood CrossRoads resulting
in certain and costly litigation with an Exxon entity; or breach the contract thereby
risking litigation with a less powerful company.  Because CP Chem chose the
latter option, it artfully crafted the letter to ensure its motives seemed
pure, when its true purpose was soliciting First American to reinsert the
annexation exception.   

Kingwood CrossRoads relies on several
factors to support this position.  First, it contends the letter was misleading
because CP Chem falsely implied the property was annexed and it had become
aware of invoices for assessments.  However, CP Chem made clear in the letter
it did not necessarily agree the property was annexed.  Further, CP Chem’s
statement that it previously had no record of invoices for assessments could
not necessarily be construed as an implication it was subsequently invoiced for
such assessments.  In fact, the jury heard that Kingwood CrossRoads’s
real-estate counsel admitted in his deposition that no part of the letter was
untruthful.  Accordingly, the jury could have reasonably determined the letter
was not misleading.

Next, Kingwood CrossRoads argues that
CP Chem lacked any duty to disclose information to First American.  However, an
outside counsel for CP Chem, who was involved in preparing the letter, opined that
disclosure regarding the purported annexation was “proper” and “imperative” so
that “the title company could make its own underwriting decision and not
subsequently have any claims or recourse against CPChem for not having
disclosed it or having concealed it.”  Kingwood CrossRoads contends this
counsel’s explanation is belied by the opinion of another expert that the
buyer, as proposed insured, rather than the seller, bears the duty to
disclose.  However, considering the expert’s testimony in context, he also opined,


it is not incorrect for another party in the same
transaction to disclose material facts about the risks on the title insurance
policy to the title insurer; and it is my experience that a party such as a
seller has an interest in making sure that adequate or full disclosure has been
made because, for example, a seller may have a concurrent liability on
warranties of title that it gives and it wants to make sure that the title
insurance policy is in full force and effect as to a certain risk.  And so the
seller will want to make sure that the policy is not voided by concealment and
that the insurer has made an intelligent decision in accepting the risk as to
which the seller may have the concurrent liability as to warranties of title.

 

Even First American’s underwriting
counsel construed the letter as “nothing more than an attempt at full
disclosure.”  Accordingly, the jury could have rationally concluded that, even
absent a legal duty to disclose, CP Chem was reasonable to possess concern
First American might seek recourse against CP Chem for failure to disclose and
to ensure the policy was not later voided.

Additionally, Kingwood CrossRoads
maintains that CP Chem’s professed need to correct misleading information was a
subterfuge.  Kingwood CrossRoads acknowledges another expert opined that
generally a seller bears a duty to correct untrue or misleading statements which
were relied on by another party to a transaction.  Kingwood CrossRoads asserts that
CP Chem however gave First American truthful information when originally persuading
it to delete the annexation exception: the Annexation Document lacked an adequate
property description; and CP Chem had not been billed for, or paid, assessments. 
According to Kingwood CrossRoads, the only purportedly misleading information CP
Chem had provided to First American was a representation that its predecessor
had not consented to annexation, but First American could not have relied on this
representation because it was made after First American deleted the
annexation exception.  Again, we conclude the jury could have rationally decided
it was reasonable for CP Chem to provide complete information throughout the
transaction even if First American had not directly relied on any previous
misleading information.

Kingwood CrossRoads lastly contends
that CP Chem’s timing negated its protestation of pure intentions because it was
unable to explain why it failed to send the letter until the eve of the closing
if it thought disclosure was so important.  CP Chem claimed it delayed in providing
the information to First American because it thought the annexation issue would
be resolved.  However, CP Chem realized in May or June of 2004 that efforts to
resolve the annexation issue were futile, yet waited several months to send the
letter.  Nevertheless, the jury was allowed to decide the weight to assign this
delay when deciding whether to believe CP Chem regarding its professed reason
for sending the letter.

Finally, the jury could have also
considered CP Chem’s following actions after postponement of the originally-scheduled
closing as evidence it did not intend to derail the transaction by sending the
letter: it obtained ELDI’s extension on the Second Amendment to Deed, which was
prerequisite to ultimately closing the transaction; and CP Chem indicated to
ELDI that they could not settle the annexation issue while closing the sale to
Kingwood CrossRoads remained a possibility.

Our inquiry does not end here because
Kingwood CrossRoads suggests that, regardless of CP Chem’s motives, there is no
“good faith” exception to the rule that a party cannot have created the obstacle
on which it bases an impracticability defense.  Accordingly, the inquiry is
whether, as a matter of law, the obstacle can be construed as arising “without
[CP Chem’s] fault” when it provided information that contributed to derailment
of the transaction yet merely told the truth in order to provide full
disclosure.  Kingwood CrossRoads suggests that CP Chem’s professed motives are
immaterial because a party relying on the “impossibility” doctrine must
demonstrate it took virtually every action within its powers to perform its
contractual duties.  See Farmers’ Elec. Co-op., 977 S.W.2d at 271; see
also Kama Rippa Music, Inc. v. Schekeryk, 510 F.2d 837, 842 (2nd
Cir. 1975).

However, an impracticability, not
impossibility, defense was submitted to the jury.  As recognized under section
261,

Although the rule stated in this Section is sometimes
phrased in terms of “impossibility,” it has long been recognized that it may
operate to discharge a party’s duty even though the event has not made performance
absolutely impossible.  This Section, therefore, uses “impracticable[”] . . .
to describe the required extent of the impediment to performance.  Performance
may be impracticable because extreme and unreasonable difficulty, expense,
injury, or loss to one of the parties will be involved. . . . Performance may
also be impracticable because it will involve a risk of injury to person or to
property, of one of the parties or of others, that is disproportionate to the
ends to be attained by performance.

 

Restatement (Second) of Contracts §
261, cmt. d (emphasis added).

Based on the testimony presented by
CP Chem, the jury could have reasonably concluded that the risk of consequences
if CP Chem did not provide full disclosure to First American constituted such
an “unreasonable loss or difficulty” or “risk of injury.”  Therefore, CP Chem’s
sending the letter did not as a matter of law negate the “without . . . fault”
element in the following sense: the exception was cured, albeit based on
incomplete information unknown to CP Chem at the time; further information affecting
the exception was subsequently discovered; and CP Chem believed it was
necessary to provide disclosure to First American to prevent unreasonable
ramifications.

C.        “Reasonable Efforts” Requirement

Kingwood CrossRoads also contends there
is no evidence CP Chem made “reasonable efforts” to overcome the obstacle to
performance once First American reinserted the exception.  Kingwood CrossRoads
suggests CP Chem could have (1) litigated the issue with ELDI, (2) agreed to
indemnify First American for the costs of defending title against a later annexation
claim, or (3) attempted to settle the annexation issue by offering payment or
indemnity to ELDI or the Association.

The jury could have rationally
concluded that the first two suggestions were not “reasonable” because both
would effectively involve costly and uncertain litigation against ELDI/the
Association and the indemnification option was not necessarily viable because
it would have required First American’s agreement.  Relative to the third
suggestion, some evidence negated that a monetary settlement would have
appeased ELDI because it insisted the property was annexed not only to collect
assessments but also to fulfill a duty to all property owners of ensuring uniform
application of the DCC&Rs.

In addition, Kingwood CrossRoads
cites undisputed testimony that CP Chem made no efforts to obtain insurance
from another title company once First American reinserted the exception. 
However, considering that Kingwood CrossRoads was unsuccessful in obtaining insurance
from another company, the jury could have concluded that CP Chem’s inaction was
immaterial to the impracticability question because it would have been equally unsuccessful.

Finally, the jury could have
determined that CP Chem made “reasonable efforts” to overcome the obstacle to
performance when it took the following actions: hired outside counsel to
analyze the issue; negotiated with ELDI for months; extended the feasibility
period and the closing date many times while attempting a resolution; and obtained
ELDI’s extension of the Second Amendment to Deed while the parties attempted to
consummate the transaction.  Although these actions, except extension of the
Second Amendment to Deed, occurred before First American reinserted the
annexation exception, they were nonetheless relevant to the reasonable-efforts inquiry
because resolution of the annexation dispute would have obviated First
American’s reinsertion of the exception.[13]

Accordingly, the evidence is legally
sufficient to support the jury’s implicit finding that, despite sending the
letter, CP Chem was “without . . . fault” relative to First American’s refusal
to issue a policy with no annexation exception and used “reasonable efforts” to
overcome the obstacle.  We overrule Kingwood CrossRoads’s second issue.

IV.      Specific
Performance

            Specific performance is
an equitable remedy that may be awarded upon a showing of breach of contract.  Blue
Moon Venture, L.L.C. v. Horvitz, No. 14-09-00459-CV, 2010 WL 4013533, at
*1 (Tex. App.—Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.)
(citing Stafford v. S. Vanity Magazine, Inc.,
231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied)).  A party seeking specific
performance must plead and prove (1) compliance with the contract including
tender of performance unless excused by the defendant’s breach or repudiation
and (2) it was ready, willing, and able to perform at relevant times.  Id.
(citing DiGiuseppe v. Lawler, 269 S.W.3d
588, 593–94, 601 (Tex. 2008)).

Whether to award specific performance
is a matter committed to the trial court’s discretion.  Chapman v. Olbrich, 217 S.W.3d 482, 491
(Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing Bell v. Rudd, 144 Tex. 491, 191
S.W.2d 841, 843 (1946); Roundville Partners, L.L.C. v. Jones,
118 S.W.3d 73, 79 (Tex. App.—Austin 2003, pet. denied)).  A trial court abuses its
discretion when it acts in an arbitrary or unreasonable manner or, stated
differently, without reference to any guiding rules or principles.           Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985).  Further, a clear failure by the trial court to analyze or
apply the law correctly constitutes an abuse of discretion.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992) (orig.
proceeding).

CP Chem attacks the
specific-performance order on several grounds: (1) it prevailed on the
impracticability defense, thereby excusing its performance; (2) it did not
breach the contract; (3) Kingwood CrossRoads’s pleadings do not support the
relief; and (4) Kingwood CrossRoads did not prove it was ready, willing, and
able to perform.   We agree the trial court abused its discretion by ordering
specific performance because CP Chem prevailed on its impracticability defense
and Kingwood CrossRoads’s pleadings did not support specific performance,
although our analysis of these grounds is somewhat interrelated.

            CP Chem argues that the
above-cited rule allowing specific performance upon proof of breach of contract
necessarily entails the plaintiff have prevailed on the claim which includes
defeating all affirmative defenses.  Kingwood CrossRoads contends it defeated
CP Chem’s impracticability defense for purposes of obtaining specific
performance through a temporary-impracticability theory:

Impracticability of performance or
frustration of purpose that is only temporary suspends the obligor’s duty to
perform while the impracticability or frustration exists but does not discharge
his duty or prevent it from arising unless his performance after the cessation
of the impracticability or frustration would be materially more burdensome than
had there been no impracticability or frustration.

 

Restatement (Second) of Contracts §
269.

            Kingwood CrossRoads
argues the temporary obstacle will be removed once this appeal is resolved
because it expects we will uphold the declaration that the property is not annexed
but reverse the declaration that the property is subject to the DCC&Rs;
thus, it can obtain a title policy reflecting the property in an unrestricted
state.  Alternatively, Kingwood CrossRoads contends that, even if we uphold the
declaration regarding the DCC&Rs, it may waive its right to a title policy
with no exception for the DCC&Rs and choose to purchase the property in a
restricted state.  When specific performance was addressed at the post-trial
hearing, Kingwood CrossRoads represented that it preferred to recover damages
but alternatively purchasing restricted property was preferable to obtaining no
property.  Kingwood CrossRoads now suggests the declaration that the property
is not annexed at least relieves it of paying assessments—a primary reason it
insisted the property was unannexed.

Assuming without deciding that the
temporary-impracticability theory is recognized under Texas law, the record and
jury findings do not support its application in the present case.  Specifically,
CP Chem prevailed entirely on Kingwood CrossRoads’s breach-of-contract action
by obtaining a favorable jury finding on impracticability.  Cf. Stafford,
231 S.W.3d at 536–37 (granting specific performance in light of finding that
defendant breached contract where defendant’s performance was not excused by any
affirmative defense, including impossibility).  Based on the submitted definition
of impracticability, the jury found that CP Chem’s “duty to render . . .
performance is discharged.”  Kingwood CrossRoads does not cite any portion of
the record where it requested submission of a jury question on temporary
impracticability to rebut this finding or in lieu of the impracticability
question as submitted.

When contested fact issues must be
resolved before a court can determine the expediency, necessity, or propriety
of equitable relief, a party is entitled to have a jury resolve the disputed
fact issues.  DiGiuseppe, 269 S.W.3d at 596; Stafford, 231 S.W.3d
at 536–37.  Further, because defenses to breach of contract are generally
considered jury questions unless the facts are uncontested, Tractebel Energy
Marketing, 118 S.W.3d at 65, it follows that a plaintiff’s theory to rebut such
an affirmative defense is also a jury question unless the facts are
uncontested.

Kingwood CrossRoads does not cite
evidence conclusively demonstrating the impracticability regarding obtaining
title insurance was only temporary.  For instance, regardless of the status of
the property relative to annexation and the DCC&Rs, performance would
nonetheless require a title company willing to issue a policy acceptable to
Kingwood CrossRoads.  However, Kingwood CrossRoads cites no evidence reflecting
the status of obtaining title insurance if the parties were to perform the
contract in the future.  In fact, the specific-performance issue begs a
question regarding the stage at which performance would be resumed: at the
point when the contract was previously terminated with First American issuing
the policy containing only exceptions conforming to the declarations obtained
in this case?; or would the notice and cure procedures outlined in the contract
begin anew with a commitment from a different company?  With respect to the
first scenario, Kingwood CrossRoads cites no evidence First American remains
willing to issue a policy regardless of the status of the property.  The trial
court also could not foreclose the possibility that a different company might
issue a commitment with additional exceptions unsatisfactory to Kingwood CrossRoads
which CP Chem is unable to cure.

Furthermore, Kingwood CrossRoads does
not cite evidence conclusively establishing that at least one other
impracticability to performance was only temporary.  Specifically, if we upheld
the specific-performance order, it would be necessary to determine the status
of the property relative to annexation and the DCC&Rs because the status
would be material to Kingwood CrossRoads, as purchaser.  However, resolution of
those issues is not necessary to disposition of the specific-performance
dispute.  Notably, regardless of the status relative to annexation and the
DCC&Rs, the property undisputedly remains subject to the “Use Restrictions”
provision set forth in the Amendment to Deed governing the sale from ELDI to CP
Chem’s predecessor.[14] 


Section 11(3) of the contract
required CP Chem to secure removal of these use restrictions to Kingwood CrossRoads’s
“reasonable satisfaction.”  The Second Amendment to Deed was the document CP
Chem originally obtained from ELDI to comply with Section 11(3).  However,
after CP Chem terminated the contract, ELDI retrieved the Second Amendment to
Deed from escrow.  One of Kingwood CrossRoads’s breach-of-contract claims
against CP Chem was based on its failure to deliver the Second Amendment to
Deed.  On appeal, Kingwood CrossRoads does not challenge the impracticability
finding relative to this alleged breach.  Moreover, Kingwood CrossRoads did not
prevail on any claim against ELDI that could arguably result in equitable
relief requiring delivery of the document.  Specifically, the jury found that
(1) Kingwood CrossRoads was a third-party beneficiary of the Second Amendment
to Deed, but ELDI did not fail to comply with this document, and (2) ELDI
intentionally interfered with the contract, which claim was based in part on its
retrieving the Second Amendment to Deed, but ELDI possessed “a good-faith
belief that it had a right to” interfere.  See Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 691 (Tex. 1989) (explaining legal-justification or excuse defense to
tortious-interference claim).  On appeal, Kingwood CrossRoads does not
challenge any of these findings or cite evidence that ELDI is willing in the
future to deliver such a document, even after a final determination regarding
status of the property. 

The evidence reflects Kingwood CrossRoads
was so concerned about use restrictions that it would not purchase the property
unless CP Chem contractually agreed to secure their removal.  Additionally, the
import of Kingwood CrossRoads’s numerous communications with CP Chem after
contract execution belies Kingwood CrossRoads’s present claim that it opposed
annexation primarily due to associated assessments.  Instead, Kingwood CrossRoads
stressed a greater concern that any restrictions, including use restrictions,
would hinder its ability to develop or market the property. 

We acknowledge that this issue
presents a somewhat cyclical fact pattern: ELDI retrieved the Second Amendment
to Deed after the transaction failed; CP Chem’s alleged breach relative to
furnishing the title policy, which caused the transaction to fail, was excused
based on impracticability; the impracticability may have been rendered only
temporary except that the potential inability to deliver the Second Amendment
to Deed created another obstacle to performance.  Nevertheless, this fact pattern
shows that, although Kingwood CrossRoads needed to defeat only the
impracticability finding regarding the title policy to recover
breach-of-contract damages, it needed to also defeat the impracticability
finding relative to CP Chem’s failure to deliver the Second Amendment to Deed
to pave the way for specific performance.

            Kingwood CrossRoads also
asserts that CP Chem did not claim specific performance would be “materially more
burdensome,” as necessary to preclude specific performance once an impracticability
has been removed.  See Restatement (Second) of Contracts § 269.  However,
because no jury question on temporary impracticability was submitted and the
theory was not conclusively established, CP Chem lacked an opportunity to rebut
its application by proving specific performance would be materially more burdensome.

Consequently, there remain two known
contingencies to performance of the contract—whether CP Chem can furnish a
title policy and existence of use restrictions—and possibly other unknown contingencies
which may render performance materially more burdensome. Accordingly, Kingwood CrossRoads
failed to conclusively establish, or obtain the necessary jury findings
demonstrating, all impracticabilities to performance were only temporary and
that CP Chem can presently perform the contract as contemplated by the
parties.  

 Finally, we disagree that Kingwood CrossRoads
may simply waive lack of the Second Amendment to Deed and purchase the property
in a restricted state because its pleadings do not support such relief. 
Although Kingwood CrossRoads pleaded for specific performance, it clearly
recited removal of all restrictions, including use restrictions, as a
contingency to its purchasing the property:

Kingwood CrossRoads has, on several occasions, both in
writing and verbally, re-affirmed to [CP Chem] that Kingwood CrossRoads is and
remains ready, willing and able to perform its obligations under the [contract]
and close the purchase of the Property upon [CP Chem’s] curing its breach of
Section 11(3) of the [contract] by filing the fully executed Second Amendment
to Deed against the Property, and upon the delivery by [CP Chem] to
Kingwood CrossRoads of a title policy in conformity with the requirements of
the [contract], i.e., without any exception for the ineffective Annexation
Document, the [DCC&Rs], or [the Association].

 

(emphasis added).

The purpose of pleadings is to give
an adversary notice of claims, defenses, and the relief sought.  Herrington v. Sandcastle Condo. Ass’n,
222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing Perez v. Briercroft Serv. Corp.,
809 S.W.2d 216, 218 (Tex. 1991)).  A trial court cannot enter judgment on a theory of
recovery not sufficiently set forth in the pleadings or otherwise tried by
consent.  Id. (citing Miller v. Towne Servs., Inc.,
665 S.W.2d 143, 147 (Tex. App.—Houston [1st Dist.] 1983, no writ)); see Tex. R. Civ. P. 301 (providing that “judgment of the court shall conform
to the pleadings . . .”).  Whether Kingwood CrossRoads was willing to purchase
the property absent delivery of the Second Amendment to Deed was not an issue tried
by consent considering that it claimed CP Chem breached the contract by failing
to deliver this instrument.

Accordingly, we conclude the trial
court acted beyond its discretion by ordering specific performance.  We sustain
CP Chem’s first issue.

V.    Fraud Damages

            After finding that CP
Chem committed fraud, the jury found that Kingwood CrossRoads sustained damages
in two categories: (1) $350,000 in out-of-pocket damages, such as expenses
incurred preparing to perform the contract; and (2) $2.5 million in attorneys’
fees to litigate the declaratory-judgment action concerning annexation against ELDI. 
The judgment included no award for out-of-pocket damages because they were
offset by settlement credits.  CP Chem challenges the remaining $2.5 million
for several reasons: (1) Kingwood CrossRoads’s attorneys’ fees are not
recoverable tort damages; (2) the fraud damages are barred by the statute of
frauds; (3) there was no evidence of several elements of fraud, including a
misrepresentation, reasonable reliance, or causation; and (4) the trial court
erred by crediting the $950,000 settlement against only the $350,000 in out-of-pocket
damages instead of all fraud damages.  Because we agree there is no evidence of
a misrepresentation, we need not address CP Chem’s other contentions.

The jury was instructed that the
following are the elements of fraud: (1) a material misrepresentation; (2) made
with knowledge of its falsity or recklessly without any knowledge of the truth
and as a positive assertion; (3) made with the intention that it should be
acted on by the other party; and (4) the other party acts in reliance on the
misrepresentation and thereby suffers injury.  See Formosa Plastics Corp. USA v. Presidio Eng’rs &
Contractors, Inc., 960 S.W.2d 41, 47–48 (Tex. 1998).  The jury was also instructed that
a party makes a misrepresentation by, among other methods, “[a] promise of future
performance made with an intent, at the time the promise was made, not to
perform as promised.”  See id. at 48.

Kingwood CrossRoads’s fraud claim
relative to the damages challenged on appeal was based on Mawdsley’s alleged
promise to litigate the annexation issue against ELDI.  Kingwood CrossRoads
contends Mawdsley made the promise with no intent to perform; thus, Kingwood CrossRoads
was forced to pursue the litigation.  As emphasized by CP Chem when challenging
the reliance element of fraud, Mawdsley’s successors at CP Chem emphatically informed
Kingwood CrossRoads before expiration of the feasibility period, and long
before Kingwood CrossRoads sued ELDI, that CP Chem declined to do so. 
Nonetheless, according to Kingwood CrossRoads, in reliance on Mawdsley’s initial
promise to resolve the annexation issue, it expended funds preparing to perform
the contract (the $350,000 out-of-pocket damages); therefore, despite learning
before expiration of the feasibility period that CP Chem declined to sue ELDI,
Kingwood CrossRoads was entitled to remain in the contract and later sue ELDI
to protect the investment it already made by ensuring the transaction closed.  Consequently,
Kingwood CrossRoads seems to acknowledge that the $2.5 million attorneys’ fees
were not directly incurred in reliance on Mawdsley’s promise but maintains they
were damages attributable to the unfulfilled promise.

Stone testified that Mawdsley indeed made
an oral promise to litigate the annexation issue, whereas Mawdsley testified he
made no such promise and litigation was presented as merely an option. 
Although the jury was free to believe Stone’s testimony, the evidence is
legally insufficient to support a finding that Mawdsley made such promise with
intent not to perform.  The only evidence Kingwood CrossRoads cites to prove lack
of intent to perform is the fact that CP Chem indeed failed to perform and
Mawdsley and his successors denied making the promise.  However, mere failure
to subsequently perform a promise, standing alone, is not evidence of fraud.  Formosa Plastics, 960 S.W.2d at 48; see
Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 305 (Tex. 2006).  Similarly, denying that an alleged
promise was ever made does not constitute legally sufficient evidence of intent
not to perform although denial may be a factor in determining intent.  See
Chapa, 212 S.W.3d at 305; T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 222 (Tex. 1992).

Proving a party lacked intent to
perform at the time a promise was made is “not easy” because intent to defraud
is usually unsusceptible to direct proof.  Chapa, 212 S.W.3d at 305 (citing Spoljaric v. Percival
Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986)).  Usually, successful claims have involved confessions by
the defendant or its agents of the requisite intent, but “‘slight
circumstantial evidence’” of fraud, when considered with a breach of the
promise to perform, is sufficient to support a finding of fraudulent intent.  Id. (citing Formosa Plastics Corp., 960 S.W.2d at
48 and quoting Spoljaric, 708 S.W.2d at 435). 
Intent tends to be a fact question uniquely within the realm of the trier of
fact because it so depends on credibility of witnesses and the weight given
their testimony.  Spoljaric, 708 S.W.2d at 434.  However, evidence “so weak that it
creates only a mere surmise or suspicion” of intent not to perform “constitutes
no evidence.”  T.O. Stanley Boot Co., 847 S.W.2d at 222.  

Because CP Chem’s denial of the
promise is insufficient to demonstrate intent not to perform, Kingwood CrossRoads
cites no evidence that, coupled with CP Chem’s failure to perform, constituted
“slight circumstantial evidence” and created more than “mere surmise or
suspicion” of intent not to perform.  Cf. Chapa, 212 S.W.3d at
305–06 (holding some evidence supported verdict that dealer fraudulently
induced vehicle buyer to sign contract promising premium model where dealer’s
personnel subsequently “snatched” it from buyer and must have destroyed it
later, signatures on at least four documents were forged, including forgeries
of her deceased husband’s signature, and dealer delivered base-model vehicle).

Furthermore, while Mawdsley was
employed by CP Chem, the parties were still attempting an amicable resolution
with ELDI, and a decision on whether to litigate was not yet necessary. 
Mawdsley had already left the company when other CP Chem employees declined to
sue ELDI.  As the person who purportedly made the promise, it was Mawdley’s
intent that was relevant to the fraud issue because Kingwood CrossRoads cites
no evidence that any of the other CP Chem employees who subsequently declined
to sue ELDI authorized or participated in the promise or were aware of the
promise when it was made.  See Formosa Plastics, 960 S.W.2d at 48
(stating that evidence must be relevant to promisor’s intent when representation
was made).  In short, Mawdsley did not fail to perform even if such a failure
coupled with his denial of the promise could have constituted evidence of
intent not to perform.

Additionally, Kingwood CrossRoads
cites no evidence that any of these other CP Chem employees knew of Mawdley’s
promise at any subsequent time.  In fact, after Mawdsley left the company, Arlen
Allison asked whether he ever made such a promise.  Mawdsley responded that
litigation was discussed but there was never a promise suit would be filed. 
Kingwood CrossRoads cites an e-mail generated by Allison shortly after Mawdsley
left CP Chem setting forth various options for resolution of the annexation
issue, including “Litigation (I would like to have updated legal opinion on
potential to prevail and estimated litigation cost.).”  We disagree that
referencing litigation as an option demonstrates an understanding by
Allison that Mawdsley had already agreed to pursue this option.  Consequently,
the evidence showed that, at most, CP Chem’s subsequent denials of Mawdsley’s
alleged promise were mistakes as opposed to deliberate attempts to disavow a
known promise.  Therefore, none of CP Chem’s statements or actions when
declining to sue ELDI constituted evidence of fraud even if their statements or
actions could have been relevant to Mawdsley’s intent when he made the promise.

Accordingly, the trial court erred by
awarding $2.5 million in fraud damages against CP Chem.  We sustain CP Chem’s
second issue.

VI.   Attorneys’
Fees

ELDI, CP Chem, and Kingwood CrossRoads
all appeal various attorney-fee awards.

A.        ELDI’s Appeal

            ELDI challenges the trial
court’s award of $1,029,817.25 in attorneys’ fees to Kingwood CrossRoads for prosecuting
its action for a declaratory judgment that the property is not annexed.

Attorneys’
fees are not recoverable in Texas unless allowed by statute or the parties’ contract.
 Chapa, 212 S.W.3d at 310–11; Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,
835 S.W.2d 75, 77 (Tex. 1992).  The Texas Declaratory Judgment Act (“the Act”) provides, “In
any proceeding under this chapter, the court may award costs and reasonable and
necessary attorney’s fees as are equitable and just.”  Tex. Civ. Prac. & Rem.
Ann. § 37.009 (West 2008).  “The [Act] entrusts attorney fee awards to the
trial court’s sound discretion, subject to the requirements that any fees
awarded be reasonable and necessary, which are matters of fact, and to the
additional requirements that fees be equitable and just, which are matters of
law.”  Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).

ELDI proffers several reasons for
reversal of the attorney-fee award: (1) the declaration that the property is
not annexed was substantively erroneous; (2) the trial court endorsed a double
recovery by assessing these fees both directly against ELDI and  as fraud
damages against CP Chem; (3) by assessing these fees against both parties yet
capping Kingwood CrossRoads’s total recovery, the court did not identify which defendant
must pay first and which defendant benefits from the cap; (4) the trial court failed
to require proper segregation; and (5) the award is not equitable and just.  

ELDI advances the following arguments
to support its “equitable and just” contention: (1) any declaration regarding
annexation was improper if CP Chem successfully challenges specific performance
because Kingwood CrossRoads is relegated to the role of “mere bystander” relative
to status of the property and such declaration becomes meaningless; (2) any declaration
regarding annexation was improper even if we uphold the specific-performance
order because the property remains restricted by the DCC&Rs, which was
Kingwood CrossRoads’s primary reason for opposing annexation and; (3)
regardless of whether a declaration regarding annexation was proper, ELDI
prevailed on the declaratory-judgment issue it “cared about”—whether the
property was restricted—and on Kingwood CrossRoads’s claim for damages.  In
essence, ELDI states it would “welcome” reversal of the declaration, but its
sole purpose on appeal is obtaining reversal of the attorney-fee award.[15]

A declaratory judgment is appropriate
only if a justiciable controversy exists concerning the rights and status of
the parties and the controversy will be resolved by the declaration sought.  Bonham
State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (citing Tex. Ass’n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)).  “To
constitute a justiciable controversy, there must exist a real and substantial
controversy involving genuine conflict of tangible interests and not merely a
theoretical dispute.”  Id.  If declaratory relief will not terminate a
controversy between parties and would be irrelevant at the time judgment is
rendered, a declaratory judgment will amount to no more than an advisory
opinion, which the trial court lacks power to provide. Kenneth
Leventhal & Co. v. Reeves, 978 S.W.2d 253, 259 (Tex. App.—Houston [14th Dist.]
1998, no pet.).

Because the trial court erred by
ordering specific performance, Kingwood CrossRoads retains no interest in a
determination regarding status of the property.  Consequently, there is no
longer any justiciable controversy regarding status, and the trial court’s
declaration was merely advisory.  We make no decision on the merits of the
annexation issue but hold only that the trial court erred by rendering any declaration
regarding annexation.[16] 
Consequently, we cannot conclude it was equitable and just to award attorneys’
fees to Kingwood CrossRoads for prosecuting its declaratory-judgment action
against ELDI.

Kingwood CrossRoads maintains the
award was just because the entire case centered on the annexation dispute. 
Based on our disposition of the specific-performance order and resulting conclusion
that any declaration regarding annexation is advisory, the only remaining
actions against ELDI were Kingwood CrossRoads’s claims for damages.  We
recognize that the annexation dispute was significant with respect to
precipitating the failed transaction because First American refused to issue a policy
with no annexation exception based merely on existence of the dispute. 
However, we do not necessarily agree that Kingwood CrossRoads’s claims for
damages depended on whether the property was actually annexed.  Nevertheless, the
jury found in ELDI’s favor on all these claims for damages, except conspiracy
to commit fraud and negligent misrepresentation.  However, attorneys’ fees are
not recoverable for prosecuting a fraud or negligent-misrepresentation claim.  See
Chapa, 212 S.W.3d at 304 (citing New Amsterdam Cas. Co. v. Tex. Indus.,
414 S.W.2d 914, 915 (Tex. 1967)); see also Tex. Civ. Prac. & Rem. Code Ann. §
38.001 (West 2008) (setting forth claims for which attorneys’ fees are
recoverable).

            Therefore, absent a
specific-performance order necessitating a declaration regarding status of the
property, awarding Kingwood CrossRoads attorneys’ fees against ELDI for proving
non-annexation is tantamount to awarding fees on (1) claims for damages on
which Kingwood CrossRoads did not prevail, and (2) claims for damages on which it
did prevail (albeit offset by settlement credits) but for which attorneys’ fees
are not recoverable under Texas law.  Accordingly, we conclude that the trial
court abused its discretion by awarding attorneys’ fees against ELDI on the
declaratory-judgment action.  We sustain ELDI’s first issue.

B.       CP Chem’s Appeal

CP Chem challenges the attorney-fee awards
to Kingwood CrossRoads of $2,942,335 for prosecuting its breach-of-contract
action against CP Chem and $1,912,517.75 for prosecuting the
declaratory-judgment action.

1.         Contract Action 

A party “may recover reasonable
attorney’s fees from an individual or corporation, in addition to the amount of
a valid claim and costs, if the claim is for . . . an oral or written
contract.”  Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).  Our court has
held that a “valid claim” under this statute is not limited to an action for
monetary damages and may include an action for specific performance.
 See Rasmusson v. LBC PetroUnited, Inc.,
124 S.W.3d 283, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing Jones v. Kelley, 614 S.W.2d 95, 96,
100–01 (Tex. 1981)). 
Further, the contract provided,

If [Kingwood CrossRoads or CP Chem] is a prevailing
party in any legal proceeding brought under or with relation to this contract
or this transaction, such party is entitled to recover from the non-prevailing
parties all costs of such proceeding and reasonable attorney’s fees.  This
Paragraph . . . survives termination of this contract.

 

            Kingwood CrossRoads did not prevail on a valid contract claim
for damages because of the jury’s finding on impracticability.  See Chapa, 212 S.W.3d at 314 (recognizing that, for purposes of
recovering attorneys’ fees, a party must overcome all affirmative
defenses to prevail on a contract claim).  Additionally,
in light of our conclusion discussed above, Kingwood CrossRoads did not prevail
on a valid claim for specific performance.

Kingwood CrossRoads argues
that we may uphold the award of its attorneys’ fees because it successfully
defended against CP Chem’s breach-of-contract counterclaim.  The judgment
reflects that the trial court assessed attorneys’ fees against CP Chem relative
to breach-of-contract actions only for Kingwood CrossRoads’s prosecution of its
own claim.  Nonetheless,
“‘[w]e must uphold
a correct lower
court judgment on
any legal theory
before it, even
if the court gives an incorrect
reason for its
judgment.’”  In
re Wells, 252 S.W.3d 439, 446 (Tex. App.—Houston [14th Dist.] 2008, orig.
proceeding) (quoting Guaranty County Mutual Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam)); accord
In re Estate of Jones, 197 S.W.3d 894, 901 (Tex.
App.—Beaumont  2006, pet. denied).  Kingwood CrossRoads submitted a proposed
judgment that was broader than the judgment ultimately rendered and would have
encompassed recovery of fees for successful defense of CP Chem’s contract
action.

Section 38.001(8) does not authorize
recovery of attorneys’ fees for successfully defending a contract claim.  See
Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); Thottumkal v. McDougal,
251 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). 
However, the above-quoted contractual provision entitling a “prevailing party”
to recover attorneys’ fees does not distinguish between successful prosecution and
successful defense of a claim.  Therefore, we may uphold the trial court’s
determination that Kingwood CrossRoads is entitled to some fees because it
successfully defended CP Chem’s breach-of-contract counterclaim.

However, CP Chem also raises an issue
regarding segregation of Kingwood CrossRoads’s fees.  If any attorneys’ fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate
recoverable from unrecoverable fees.  Chapa, 212 S.W.3d at 313.  “[I]t is only when discrete legal
services advance both a recoverable and unrecoverable claim
that they are so intertwined that they need not be segregated.”  Id. at
313–14.  The judgment reflects the trial court determined that segregation was
not required relative to its other attorney-fee awards or alternatively the
awards should be reduced by five percent if an appellate court determines
segregation was required.  However, because the trial court did not
specifically award fees for Kingwood CrossRoads’s successful defense of CP
Chem’s contract claim, the court issued no finding on whether segregation of
those fees is required.

Accordingly, we may not merely affirm
the entire attorney-fee award based on Kingwood CrossRoads’s successful defense
of this claim.  Instead, we remand for Kingwood CrossRoads to segregate these
fees or demonstrate segregation is not required and for the trial court to
determine the amount of fees recoverable for defense of CP Chem’s contract
claim.  We sustain, in part, and overrule, in part, CP Chem’s third and sixth
issues.

2.         Declaratory-Judgment Action

CP Chem argues (1) the evidence is
legally and factually insufficient to support the $1,912,517.75 award to
Kingwood CrossRoads because its attorney attributed only $11,000 of the fees to
prosecuting the declaratory-judgment action against CP Chem, and (2) the award
is not equitable and just.  This second contention is based in part on CP Chem’s
argument that Kingwood CrossRoads obtained no meaningful relief against CP Chem
on the declaratory-judgment action.  We agree with this second argument.

Specifically,
Kingwood CrossRoads’s attorney testified that it named CP Chem as a party to
the declaratory-judgment action primarily because it held title to the property
and questioned whether it was a necessary party.  Indeed, irrespective of our
disposition regarding specific performance and resulting conclusion that any
declaration relative to the annexation status was improper, there was no
justiciable controversy between CP Chem and Kingwood CrossRoads relative to the
annexation issue.  CP Chem was not the party with authority to confirm non-annexation;
rather, before the transaction failed, Kingwood CrossRoads sought ELDI’s
confirmation to conclusively resolve the issue.  ELDI, not CP Chem, has
maintained that the property is annexed, and CP Chem took no position at trial
on this issue.  If Kingwood CrossRoads were to purchase the property, any
dispute over its status would lie between ELDI/the Association and Kingwood CrossRoads.
 

Nonetheless, as
we have discussed, Kingwood CrossRoads has no interest in obtaining any
declaration regarding annexation because it is not entitled to specific
performance.  Thus, there is no longer any justiciable controversy, much less
between Kingwood CrossRoads and CP Chem, regarding annexation, and the trial
court erred by rendering its declaration.  Accordingly, we conclude the trial
court acted beyond its discretion by finding assessment of attorneys’ fees against
CP Chem was “equitable and just” as required under the Act to sustain such an
award.  Similarly, to the extent that the parties’ contractual provision
allowing recovery of attorneys’ fees would encompass “prevailing” on a
declaratory-judgment action relative to the annexation status, Kingwood
CrossRoads is no longer a “prevailing party.” 

Kingwood CrossRoads
contends CP Chem’s unfulfilled promise to litigate the annexation issue against
ELDI “makes it equitable and just to have CP Chem shoulder those fees,
regardless of the extent of CP Chem’s participation at trial” on the issue.  To
the contrary, awarding Kingwood CrossRoads attorneys’ fees under the Act on
this basis would be tantamount to its recovering (1) damages for breach of a
promise that was unenforceable under contract law pursuant to the statute of
frauds, and (2) fraud damages despite legally insufficient evidence of fraud.

Kingwood CrossRoads
also contends it is entitled to recover fees against CP Chem under the Act
because Kingwood CrossRoads was required to prove the property was not annexed
to defeat CP Chem’s impracticability defense.  We do not necessarily agree that
resolution of the impracticability issue depended on a determination regarding
the status of the property relative to annexation.  Regardless, we have upheld
the impracticability finding.  Consequently, awarding Kingwood CrossRoads
attorneys’ fees for proving the property was not annexed relative to the
impracticability defense would be tantamount to awarding its fees for
prosecuting a contract claim on which CP Chem prevailed.

In sum, we
hold that the trial court abused its discretion by assessing attorneys’ fees
against CP Chem on Kingwood CrossRoads’s declaratory-judgment action.  We sustain
CP Chem’s fifth issue and need not consider its fourth issue.

C.        Kingwood CrossRoads’s Appeal

            Kingwood CrossRoads
appeals the award to CP Chem of $1.2 million “as a prevailing party in the
contract action and as a just and equitable award” under the Act.

            With respect to the
“contract action,” Kingwood CrossRoads cites CP Chem’s failure to prevail on
its own theories for affirmative relief.  However, because CP Chem indeed did
not prevail on its own contract claim, the award was necessarily predicated on its
successfully defending, in part, Kingwood CrossRoads’s contract action; despite
ordering specific performance, the trial court clearly decided that CP Chem’s
successful defense of the claim for damages rendered it “a” prevailing party.

Kingwood CrossRoads contends CP Chem
was not entitled to attorneys’ fees even if we uphold the impracticability
finding because “prevailing party” for purposes of awarding attorneys’ fees means
“a party who successfully prosecutes an action or successfully defends against
an action on the main issue.”  See Emery Air Freight Corp. v. Gen. Transp.
Sys., Inc., 933 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.] 1996,
no pet.), disapproved of on other grounds by Evanston Ins. Co. v.
ATOFINA Petrochemicals, Inc., 256 S.W.3d 660 (Tex. 2008).  According
to Kingwood CrossRoads, CP Chem’s impracticability defense was a “fragment” of
the case and immaterial to the main issue:  “who was entitled to the
Property[?]”

We disagree that determining which
party was entitled to the property was the main issue and that the
impracticability defense was immaterial because it precluded Kingwood CrossRoads
from recovering more than $4 million in breach-of-contract damages.  Regardless,
in light of our conclusion that the trial court erred by ordering specific
performance, CP Chem is now the prevailing party on Kingwood CrossRoads’s
entire contract claim, including the issue of which party is entitled to the
property.

Kingwood CrossRoads also argues it
cannot be characterized as a “non-prevailing party” because the jury found it
“utterly blameless.”  We acknowledge that the jury found no fault on Kingwood CrossRoads’s
part relative to the failed transaction.  Nonetheless, the contract entitled a
party to recover attorneys’ fees for successful defense of a claim.

Finally, we need not address whether
CP Chem is entitled to recover fees under the Act, as determined by the trial
court.  Kingwood CrossRoads does not argue on appeal that CP Chem was required
to segregate its fees if we uphold the attorney-fee award on only one ground cited
by the trial court.  Rather, Kingwood CrossRoads argues that the award is
erroneous on both grounds (contract and declaratory-judgment actions). 
Accordingly, we will uphold the entire award because CP Chem successfully defended
the contract action.  We overrule Kingwood CrossRoads’s third issue.

VII.   Sanctions Against ELDI

A.       Background

The sanctions arose from a dispute
about electronic discovery relative to the annexation issue.  Approximately a
week before filing suit, Kingwood CrossRoads requested that ELDI preserve all
internal e-mails, as well as e-mails between ELDI and CP Chem, First American,
the Association, and ELDI’s predecessor, pertaining to the subjects at issue in
this case.  During discovery, Kingwood CrossRoads requested that ELDI produce “[a]ll
e-mail communications of” six named ELDI employees “relating or referring to
the [ELDI]/Chevron Contract, the Annexation, the Property, the Sales Contract,
Blenheim Corporation, or Keith Stone.”

            Based on the deposition
testimony of one ELDI employee, Kingwood CrossRoads began questioning whether
ELDI had fully responded to its request.  Kingwood CrossRoads further
questioned ELDI’s discovery responses when Kingwood CrossRoads received the
Association’s responses reflecting that, at a February 23, 2005 meeting, it approved
a proposal by ELDI whereby the Association would waive prior assessments in
exchange for CP Chem’s agreement the property is annexed.  The Association sent
the minutes reflecting this approval to ELDI’s counsel.  Kingwood CrossRoads
contends this evidence was vital to its position on the annexation dispute because
any 2005 agreement to effect annexation reflected that both ELDI and CP Chem
recognized the 1994 attempt was invalid.

Kingwood CrossRoads contends ELDI
produced no minutes of the meeting except for a handwritten note on an agenda,
but the Association’s discovery responses included e-mails about the meeting
which should have existed on ELDI’s servers.  Although ELDI suggests Kingwood CrossRoads
merely complains ELDI failed to produce duplicates of e-mails that Kingwood CrossRoads
obtained from the Association, Kingwood CrossRoads emphasizes that ELDI’s
failure to produce these e-mails indicated it may have possessed other e-mails
for which it failed to search or deleted after a litigation hold should have
been placed.

            Kingwood CrossRoads filed
a motion to compel a search for the e-mails.  On December 5, 2005, the trial
court signed an order (“the order”), ruling as follows:

[ELDI] shall conduct a further search of its e-mails,
under the supervision of an independent third-party experienced in the
discovery of electronic information, including all e-mails that may be stored
on servers, back-up tapes, or otherwise. . . . Within three days of the date of
this Order, Kingwood CrossRoads shall tender to ELDI the identities of three
independent individuals/entities to perform this search, and within three days
thereafter, ELDI shall select one to do the actual search, and if ELDI fails to
select one such third-party within three days, Kingwood CrossRoads shall select
one such third-party from the list of three. The expense of such search shall
be borne by ELDI . . .

 

From Kingwood CrossRoads’s proposed
third-parties, ELDI chose Dr. Larry Leibrock of eForensics.[17] 
Leibrock became ill shortly before the search began, so a colleague assumed his
responsibilities, but Leibrock was involved in pertinent initial discussions
relative to parameters of the search.  ELDI hired its own experts, the LIT
Group and Baker Robbins Company, to perform the search.  The search was
conducted in January 2006.

Subsequently, Kingwood CrossRoads
filed a “Motion to Show Compliance With Order Compelling E-Discovery Or, In the
Alternative, Motion for Sanctions,” complaining that ELDI’s search was
inadequate.  The trial court ordered the parties to conduct discovery from
third-parties who participated in the search and then appear before a discovery
master to resolve their disputes.  After extensive discovery, more wrangling,
and further attempts to resolve the dispute with the master, Kingwood CrossRoads
filed a renewed motion for sanctions, with numerous exhibits attached, arguing
ELDI violated the order based on the manner in which it conducted the search.

At a pre-trial hearing, the court
found that ELDI violated the order, announced its intent to impose monetary
sanctions in an amount to be determined later, and deferred a decision on submitting
a spoliation instruction to the jury.  During trial, ELDI stipulated to the
amount of Kingwood CrossRoads’s reasonable attorneys’ fees—$637,612.50—relative
to the discovery issue although it reserved the right to appeal the decision to
impose sanctions.  After close of evidence, the trial court announced it would assess
these fees as sanctions but not submit a spoliation instruction.  The court
remarked that it spent considerable time deliberating the issue, thoroughly
reviewed authority on the standards for assessing sanctions, and did not make
its decision “lightly.”  In the judgment, the court stated the sanctions of $637,612.50
were based on violations of its orders and the Texas Rules of Civil Procedure.[18]

B.        Analysis

After notice and hearing, a trial
court may sanction a party who disobeys an order to provide or permit
discovery.  See Tex. R. Civ. P. 215.2(b).  We employ an
abuse-of-discretion standard to review a trial court’s imposition of discovery
sanctions.  Cire v. Cummings, 134 S.W.3d 835, 838
(Tex. 2004) (citing Bodnow Corp. v. City of Hondo,
721 S.W.2d 839, 840 (Tex. 1986); Downer, 701 S.W.2d at 241).

Kingwood CrossRoads contends ELDI
violated the order through numerous actions: (1) preventing the independent
expert from playing any substantive role, much less a supervisory role, in the
search; (2) refusing to search back-up tapes; (3) knowingly destroying back-up
tapes; (4) supplanting the independent expert’s role through use of “captive”
consultants not permitted under the order; (5) misleading the independent
expert into believing it was ELDI’s “captive” consultant; (6) manipulating
search terms to impair effectiveness of the search; (7) failing to search
alternative forms of electronic storage media (such as flash drives); (8)
concealing its actions from the discovery master and the trial court; (9)
submitting an affidavit to the court claiming the search would cost ELDI
millions of dollars when the actual cost to preserve relevant e-mails would
have been $300; and (10) failing to preserve all relevant e-mails in response
to Kingwood CrossRoads pre-suit request.  

ELDI contends the trial court abused
its discretion by imposing sanctions because (1) ELDI did not violate the
order, (2) it was at least “substantially justified” in its construction of the
order, and (3) the amount was too severe for the alleged wrongdoing.

The court’s comments at the sanctions
hearing indicate it found violations of the order because ELDI, rather than the
independent expert, performed the search, ELDI refused to search back-up tapes,
and ELDI copied over back-up tapes.  However, oral comments made by a trial
court do not substitute for findings of fact and conclusions of law, and the
court did not issue findings and conclusions.  See In re W.E.R., 669 S.W.2d 716, 716
(Tex. 1984) (per
curiam); Huang v. Don McGill Toyota, Inc., 209 S.W.3d 674,
679 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  Moreover, in
reviewing a sanctions order, we are not bound by a trial court’s findings of fact
and conclusions of law; rather, we must independently review the entire record
to determine whether the trial court abused its discretion.  Am. Flood Research, Inc. v. Jones,
192 S.W.3d 581, 583 (Tex. 2006) (per curiam).  Therefore, we may uphold the sanctions based
on any violation of the order that has support in the record.  See id.

We conclude the record supports a
finding that ELDI violated the order by at least refusing to search back-up
tapes and usurping the role of the independent expert.  With respect to its
substantial-justification argument, ELDI contends there were several
alternative manners in which to construe the trial court’s order; thus, even if
it violated the order as intended by the court, its interpretations were
reasonable under the circumstances.  ELDI’s first and second arguments are
somewhat interrelated; therefore, with respect to the two violations on which
we uphold the sanctions, we will discuss together the issues concerning “substantial
justification” and the alleged violation.

1.     
    Refusal
to Search Back-up Tapes

Kingwood CrossRoads contends the most
flagrant violation of the court’s order was ELDI’s refusal to search backup
tapes.  Leibrock testified ELDI’s in-house counsel handling the search was “highly
argumentative,” “uncooperative,” and “strident.”   Before the search began,
counsel resisted Leibrock’s attempts to establish a “protocol” for searching
back-up tapes, stating, “We’re not doing any backups. This is a waste of time
and a waste of money.”[19] 
In response, Leibrock protested, “That’s what the court order says.”  We hold
that the trial court did not abuse its discretion by finding ELDI violated the
order when it unquivocally announced its refusal to perform an action required
under the order.

ELDI’s primary argument on appeal is
that the order was unclear on whether the trial court required an “ordinary
search” for e-mails or an extraordinary forensics search for deleted e-mails. 
ELDI cites Texas Rule of Civil Procedure 196.4, which governs electronic
discovery:

To obtain discovery of data or information that exists
in electronic or magnetic form, the requesting party must specifically request
production of electronic or magnetic data and specify the form in which the
requesting party wants it produced. The responding party must produce the
electronic or magnetic data that is responsive to the request and is reasonably
available to the responding party in its ordinary course of business. If the
responding party cannot--through reasonable efforts--retrieve the data or
information requested or produce it in the form requested, the responding party
must state an objection complying with these rules. If the court orders the
responding party to comply with the request, the court must also order that the
requesting party pay the reasonable expenses of any extraordinary steps
required to retrieve and produce the information.

 

Tex. R. Civ. P. 196.4.  As ELDI
asserts, the order does not mention “extraordinary” steps or “deleted” e-mails
or require Kingwood CrossRoads to pay the costs of any forensic search.  ELDI
argues it was therefore justified in construing the order as not requiring ELDI
to search for deleted e-mails, which it characterizes as “dumpster diving,”
i.e., a search through the trash.  ELDI also contends that any search of
back-up tapes would simply have duplicated the search of the servers.  

These complaints would have been more
appropriately presented before the trial court signed the order or in a request
for reconsideration.  However, this appeal is from the trial court’s finding
that ELDI failed to comply with the order as written.  The order did require a
search for “back-up” e-mails.  Accordingly, ELDI’s complaints regarding the
breadth of the order do not establish the trial court abused its discretion by
finding that ELDI disregarded the order.

2.         Usurpation of Independent Expert’s
Role

ELDI’s primary contention regarding
any usurpation of the independent expert’s role is that its conduct was
substantially justified based on its interpretation of the order.  When
transmitting its proposed third-party experts, Kingwood CrossRoads listed
companies “to perform the Court ordered search.”  ELDI also received a proposed
confidentiality agreement for one such company, but it was drafted so that the
company and Kingwood CrossRoads were the parties thereto.  

ELDI wrote to the trial court
requesting clarification regarding who was required to perform the search and
explaining that any confidentiality agreement should operate between the third
party and ELDI, as the party possessing confidential information.  ELDI’s
letter included the following:

We do not believe that the Order contemplates that the
outside company will perform the search, but instead we read the Order to
compel [ELDI] to conduct a further search under the supervision of the company
selected.

 

We believe that [Kingwood CrossRoads] has been given
the opportunity to basically select three companies to oversee a search by
[ELDI], paid for by [ELDI], and that any [confidentiality] agreement should and
must be between [ELDI] and one of the companies selected by [Kingwood CrossRoads]. 


 

The court replied that the second above-cited
paragraph accurately reflected the order.

At the sanctions hearing, the trial
court remarked it had specified in the order that the expert must actually
conduct the search: “There is no question in anybody’s mind, including
[ELDI’s], that I wanted an independent company to do the search.  To say
otherwise is a mockery.”  The court characterized the first above-quoted
paragraph in ELDI’s clarification letter as “Wrong, Dead wrong.  Not even
close.”  According to the court, by previously responding it agreed with the
second paragraph in ELDI’s letter, it clarified that “there will be an
independent party supervising [ELDI’s] required additional search; but
obviously, the independent company was to do the search.”

We agree with ELDI that the order did
not clearly specify that the expert must perform the search because it
contained two somewhat conflicting sentences:  “[ELDI] shall conduct a
further search of its e-mails, under the supervision of an
independent third party . . .” (emphasis added); and “Kingwood CrossRoads
shall tender to ELDI the identities of three independent
individuals/entities to perform this search, and within three days
thereafter, ELDI shall select one to do the actual search.”  (emphasis
added).   Based on the first above-cited sentence identifying the actual action
required of ELDI under the order, we conclude ELDI was justified in believing
it could perform the search under the expert’s supervision.  Further, the trial
court’s response to ELDI’s clarification request did not clearly instruct that
the expert was to physically perform the search.  Instead, by agreeing with the
second above-quoted paragraph in ELDI’s clarification request, the court
suggested ELDI could physically perform the search as long as it was supervised
by the expert.

Nonetheless, Kingwood CrossRoads’s
complaint is not that ELDI, rather than the independent expert, physically
performed the search.  As Kingwood CrossRoads asserts, it is immaterial “who
was sitting at the keyboard” during the search.  Instead, Kingwood CrossRoads
primarily complains that ELDI prevented the expert from even exercising a
supervisory role.  Notwithstanding any lack of clarity in the order and the
trial court’s e-mail concerning who was required to physically perform the
search, the court definitely required the expert’s supervision.  ELDI obviously
recognized this intended role because the parties executed a Rule 11 agreement
that the search would commence on a certain date and continue to conclusion
“under the supervision and oversight of” Dr. Leibrock.  Because we may consider
the entire record when evaluating the decision to sanction ELDI, we will
evaluate Kingwood CrossRoads’s complaint that ELDI usurped the expert’s
supervisory role.

Leibrock testified that ELDI’s
in-house counsel resisted Leibrock’s request to meet with ELDI’s “IT” staff and
his efforts to establish a “protocol,” which he deemed necessary to the search. 
Counsel stated that the protocol was “unacceptable” and “way too expensive” and
“there’s nothing here anyway.”  According to Dr. Leibrock, counsel generally
insisted the search would be “done [ELDI’s way],” stating “[t]his is Exxon’s data. 
We know how to search these particular systems.”  These comments are contrary
to the court’s ordering a search supervised by an independent expert because
ELDI’s previous search had allegedly been inadequate.  Moreover, it became
clear to Leibrock that ELDI simply wanted eForensics to act as “observer,” not
“supervisor.”  To Leibrock, “supervision” meant generating the search terms,
which eForensics did not do.  

Additionally, an employee of LIT
Group suggested that ELDI’s attorneys decided the search terms.  An internal
e-mail from a LIT Group consultant stated, “EForensics . . . will strictly
serve as a witness to the process.”

Another eForensics representative,
Randall Casey, testified that the contract presented by ELDI contemplated eForensics
would serve as ELDI’s expert and was not a contract his company would execute
when hired as a court-ordered neutral.  He signed the contract because, based
on his conversation with ELDI’s counsel, he thought the company was being hired
as ELDI’s expert rather than a court-ordered neutral.  ELDI and its counsel led
Casey to believe that eForensics was to serve solely as observer of other
disinterested third parties (Baker Robbins and the LIT Group), as opposed to
supervisor.  In sum, we conclude that some evidence supports a finding that
ELDI usurped the intended supervisory role of the independent expert.

3.         Amount of Sanctions

Finally, ELDI contends that
$637,612.50 is an excessive sanction and unjust relative to the alleged
misconduct.  At one point in its brief, ELDI states it “will honor its factual
stipulation about the reasonableness of” the fees, but later seems to challenge
the amount of sanctions.  According to ELDI, its stipulation about the amount
of reasonable and necessary fees relative to the discovery dispute did not
equate to an agreement that awarding this amount was appropriate as a sanction.

However, the trial court did not
sanction ELDI under subsections (1) through (7) of rule 215.2(b), which set
forth various degrees of sanctions a court may order “as are just,” ranging
from assessing costs to striking pleadings.  See Tex. R. Civ. P.
215.2(b)(1)–(7).  Instead, the trial court applied only subsection (8), which
provides,

In lieu of any of the foregoing orders or in addition
thereto, the court shall require the party failing to obey the order or
the attorney advising him, or both, to pay, at such time as ordered by the
court, the reasonable expenses, including attorney fees, caused by the failure,
unless the court finds that the failure was substantially justified or that
other circumstances make an award of expenses unjust.

 

Id. 215.2(b)(8) (emphasis added).

We acknowledge that the amount of
sanctions is significant.  However, because ELDI agreed to reasonableness of
the amount and we uphold the trial court’s finding that ELDI violated the order,
our inquiry is confined to addressing whether the trial court abused its
discretion by awarding attorneys’ fees, and we do not evaluate the amount in
comparison to the misconduct.  See id.  We have rejected ELDI’s
argument that its interpretation of the order was substantially justified with
respect to the above-discussed violations.  We further conclude the trial court
did not abuse its discretion by determining an award of attorneys’ fees was
just because some evidence indicated ELDI failed to produce all requested
e-mails on a subject, the order was rendered to aid in discovery of the
e-mails, and ELDI made known at the outset of the search that it did not intend
to fully comply with the order.  We overrule ELDI’s second issue.

 

VIII.    Conclusion

We reverse Paragraphs 1, 5, 6, and 8a
of the trial court’s judgment and render judgment that Kingwood CrossRoads take
nothing on its fraud claim against CP Chem and on its request for attorneys’
fees against CP Chem and ELDI for Kingwood CrossRoads’s prosecution of its declaratory-judgment
action.

We reverse Paragraph 4 of the
judgment and render judgment that Kingwood CrossRoads take nothing on its
request for attorneys’ fees against CP Chem for Kingwood CrossRoads’s prosecution
of its breach-of-contract claim; but we remand for determination of the amount
of attorneys’ fees Kingwood CrossRoads is entitled to recover for its defense
of CP Chem’s breach-of-contract claim.

We reverse Paragraph 9 of the
judgment and render judgment denying Kingwood CrossRoads’s request for a
declaratory judgment that the property is not annexed or alternatively that, if
the property is annexed, ELDI and the Association waived, or are estopped from
enforcing, their rights under the Annexation Document.

We reverse Paragraph 11 of the
judgment and render judgment denying Kingwood CrossRoads’s request for an order
requiring specific performance of the contract.

We affirm the remainder of the
judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel
consists of Chief Justice Hedges and Justices Seymore and Sullivan. (Sullivan,
J., not participating.).[20]









[1]
This case was transferred to our court from the Beaumont Court of Appeals;
therefore, we must decide the case in accordance with its precedent if our
decision would be otherwise inconsistent with its precedent.  See Tex.
R. App. P. 41.3.





[2]
ELDI was previously known as “Friendswood
Development Company”—its name at the time of several transactions pertinent to
the present case; we will hereafter refer to this entity as “ELDI” for all
purposes because the distinction between names is immaterial to our analysis.

 





[3]
In light of the assignment, we will hereafter refer to “Kingwood CrossRoads” as
though it was the original party to the contract.





[4]The
referenced feasibility period was the time during which Kingwood CrossRoads
could terminate the contract for any reason and obtain return of its $125,000
earnest money.





[5]
The Association remains an appellee in Kingwood CrossRoads’s cross-appeal
apparently because issues involving status of the property affect the
Association, but it seeks no appellate relief.





[6]
The jury also found that execution of the
Special Warranty Deed, the Annexation Document, and the 1994 Second Amendment
to PSA was contemporaneous with filing the Special Warranty Deed and the
Annexation Document. This question was submitted at ELDI’s request in an
attempt to prove annexation despite lack of a legal property description in the
Annexation Document and ELDI’s filing of the document after divesting itself of
the property.  However, the trial court obviously rejected application of the
contemporaneous-filing theory by ruling the property was not annexed.





[7]
During trial, the court remarked it would
require Kingwood CrossRoads to segregate attorneys’ fees.  The parties
stipulated they would not segregate when proving fees to the jury but present
segregation arguments to the court after trial.  Thus, the jury determined
total fees incurred by the parties: $3 million by Kingwood CrossRoads
(apparently reduced by the court to $2,942,335); and $1.2 million by CP Chem. 
Then, in the judgment, the court found segregation was not required relative to
amounts awarded therein; instead, it ruled that Kingwood CrossRoads was
“entitled” to recover its total fees for prosecuting its contract action
against CP Chem and for prosecuting its declaratory-judgment action, albeit the
court divided liability for the latter among CP Chem and ELDI.  Alternatively,
the court decided it attorney-fee awards must be reduced by 5% if an appellate
court requires segregation.





[8]
At the post-trial hearing, the court commented,
“there is no past breach . . . as to any party” and “the jury found [CP Chem] .
. . didn’t breach.”  However, the court did not specifically state it was
disregarding the jury’s failure-to-comply finding.  Therefore, we construe the
court’s refusal to award damages as based on the impracticability finding. 
Even if the court intended to disregard the failure-to-comply finding, our
disposition would be the same because we uphold the impracticability finding.





[9]
CP Chem’s later refusal to sign the Declaration of Non-annexation did not form
a basis for Kingwood CrossRoads’s breach-of-contract action because no such
obligation was imposed under the contract.  Kingwood CrossRoads did plead that
CP Chem breached the contract by failing to deliver the Second Amendment to
Deed (which was provided but later retrieved by ELDI).  On appeal, Kingwood
CrossRoads does not challenge the impracticability finding relative to this
alleged breach.  





[10]
CP Chem asserts Kingwood CrossRoads’s
breach-of-contract claim was based on CP Chem’s failure to convey property free
of the DCC&Rs and the jury found impracticability because the property was
subject to the DCC&Rs even if it was not annexed.  However, the basis for
the breach-of-contract claim was not CP Chem’s failure to deliver property
unencumbered by the DCC&Rs irrespective of the annexation status.  On
appeal, Kingwood CrossRoads asserts that all parties knew the issue was whether
the property was annexed and ELDI claimed it was subject to the DCC&Rs irrespective
of the annexation status only when it was unsuccessful at proving annexation. 
Kingwood CrossRoads does not cite specific instances in the record supporting
this assertion.  However, the import of the record as a whole shows that,
between contract execution and the unconsummated closing, discussions among,
and efforts by, at least CP Chem and Kingwood CrossRoads focused on whether the
property was annexed as though it was the only manner in which the DCC&Rs
were applicable.  The evidence reflects that First American’s refusal to issue
a policy without the annexation exception led to the failed transaction.





[11]  Kingwood CrossRoads objected on no-evidence grounds
to submission of any jury question on impracticability.  Alternatively,
Kingwood CrossRoads objected to the question submitted because the court
omitted language embodying the assumption-of-risk principle, and Kingwood
CrossRoads tendered language encompassing this principle.  See Tractebel
Energy Mktg., 118 S.W.3d at 68 (citing St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2003) when recognizing that generally jury question must
incorporate elements prescribed by Restatement if it has been adopted under
Texas law).  In its post-trial motion
to disregard, Kingwood CrossRoads argued the evidence is insufficient to
support the impracticability finding under a proper definition.  Accordingly,
the issue is whether CP Chem assumed the risk as a matter of law whether
Kingwood CrossRoads frames its appellate legal-sufficiency challenge as complaining
the trial court (1) submitted any impracticability question or (2) refused to
disregard the jury’s finding because impracticability was conclusively negated
under a proper definition.  See id. at 68–69 (citing Wolff, 94
S.W.3d at 530 in recognizing we measure sufficiency of evidence against
definition that should have been submitted when party objected to trial court’s
erroneous omission of part of the definition).





[12] CP Chem argues the exception was never cured because
of ELDI’s refusal to confirm non-annexation and Kingwood CrossRoads knew before
expiration of the feasibility period that CP Chem would not cure but elected to
proceed with closing.  We disagree.  Kingwood CrossRoads indeed wanted the annexation
dispute resolved with ELDI because it affected marketability of the property. 
However, the cure effected using the procedures set forth under the contract
was removal of the annexation exception from the title commitment irrespective
of whether ELDI would confirm non-annexation.  Kingwood CrossRoads was willing
to close absent such confirmation because it had the title commitment.  In
fact, CP Chem obtained summary judgment on any breach-of-contract claims by
Kingwood CrossRoads that were based on CP Chem’s failure to resolve the
annexation issue with ELDI because this extra-contractual promise did not
satisfy the statute of frauds.  By the same token, CP Chem cannot argue the
title exception was never cured because this extra-contractual matter was
unresolved.





[13]
As we have noted, the trial court ruled that, pursuant to the statute of
frauds, CP Chem’s alleged unfulfilled promises to resolve the annexation dispute
with ELDI could not form the basis for a breach-of-contract action because the
promises were not contained in the contract.  Nonetheless, as demonstrated
above, CP Chem’s efforts to resolve the annexation dispute remained relevant to
the impracticability defense.





[14]
ELDI argues that another portion of this
provision which lifted the use restrictions after twenty years from execution
of the instrument “but only so long as
all buildings or structures erected or maintained thereon are as provided for
and in accordance with [the DCC&Rs] applicable to the Property” rendered
the property subject to the DCC&Rs; whereas Kingwood CrossRoads posits this
provision was applicable only if the property had otherwise been made subject
to the DCC&Rs; i.e., via annexation.  Regardless of this dispute, the first
portion of the provision undisputedly set forth “Use Restrictions” on the
property for the first twenty years.





[15]
Kingwood CrossRoads argues ELDI waived its challenge to the declaration because
its two stated issues challenge attorneys’ fees and sanctions without
mentioning the declaration.  However, in its “Table of Contents” and
substantive argument, ELDI clearly challenges the declaration as a sub-issue of
its attorney-fee issue.  Therefore, we construe ELDI’s challenge to the
declaration as a subsidiary question “fairly included” in the issues
presented.  See Tex. R. App. P. 38.1(f); GP II Energy, Inc. v.
Chamberlain, Hrdlicka, White, Williams & Martin, No.
14-07-00237-CV, 2008 WL 4354931, at *6 n.8 (Tex. App.—Houston [14th Dist.] Aug.
26, 2008, no pet.) (mem. op.) (treating arguments as subsidiary questions
fairly included in listed issues although arguments did not match issues
presented).





[16]
Arguably, for the same reason, the trial court erred by rendering any
declaration on whether the property is subject to the DCC&Rs.  However,
Kingwood CrossRoads is the only party who attacks this declaration, and its
challenge is based on the merits and not, of course, on any contention that a
declaration was meaningless.  Accordingly, we will leave intact the declaration
regarding the DCC&Rs. 





[17]
The name of this company was subsequently changed to “CyberForensics,” but we
will refer to it as “eForensics” throughout this opinion.





[18]
The court also awarded attorneys’ fees if
Kingwood CrossRoads prevails in an appeal of the sanctions.  ELDI does not
challenge these fees independent of its attack on the sanctions as a whole.





[19]
The counsel at first said, “We don’t have any backups.”  However, by then
stating, “We’re not doing any backups,” she seemed to indicate backups might
have existed but ELDI refused to search them.  Even ELDI seems to acknowledge
in its brief that back-ups existed because, rather than claiming there were no
such tapes, it contends a search of back-ups would have duplicated a search of
the server.  





[20]
Justice Sullivan was assigned to the panel for this case and participated
during oral argument.  However, he subsequently resigned from the court
and did not participate in deciding this case.  See Tex. R. App. P.
41.1(b) (“After argument, if for any reason a member of the panel cannot
participate in deciding a case, the case may be decided by the two remaining
justices.”).